OPINION OF THE COURT
 

 Rosenblatt, J.
 

 In this Labor Law § 240 (1) case, plaintiff sustained injuries after falling from a ladder. At the time, he was an assistant mechanic for AWL Industries, a company that contracted with defendant Port Authority of New York and New Jersey to work on air-conditioning systems at the World Trade Center complex. AWL’s contract involved cleaning, repairing and rehabilitating air handling units, including supports, anchors and piping in several buildings. The agreement provided that AWT, as contractor, was obligated to ascertain “the extent of
 
 *880
 
 all construction” related to the project and to satisfy Port Authority’s inspection standards. Some of the air handling units measured 20 by 20 feet and were built into the wall. Accordingly, the contract required AWL to level floors, lay concrete and rebuild walls to replace large air filtering systems.
 

 As an assistant mechanic, plaintiff worked on overhauling air-conditioning systems, and on return and exhaust units. He also assisted a more senior mechanic in changing bearings, motor sheaves and flywheels. His specific tasks varied as he received each day’s assignments when signing in for work. On the day of the injury, plaintiff and coworker Bob Card were readying air handling units for inspection, using tools (wrenches, a welder set and “Craftsman-type” tools) to perform any work that had to be done. Card set up a ladder to inspect an air-conditioning return fan about eight feet tall, suspended at a height of approximately 20 feet. Plaintiff held the ladder while Card climbed up and onto the unit. Card then asked plaintiff to give him a wrench, and plaintiff began to climb the ladder. When he was about 15 feet off the ground, the ladder slid out from under him, and he fell. The ladder bounced off the floor and hit plaintiff in the face before he fell to the ground.
 

 Plaintiff and his wife sued the Port Authority in United States District Court for the Southern District of New York, alleging a violation of New York Labor Law § 240 (1). The District Court granted defendant summary judgment on the section 240 (1) claim. Plaintiff appealed to the Second Circuit, which certified to us the question “whether the conduct at issue in this action, inspections of construction work, fell within the purview of New York Labor Law § 240 (1).” We accepted certification (99 NY2d 578 [2003]) and now answer the question in the affirmative.
 
 *
 

 Labor Law § 240 (1) provides special protection to those engaged in the “erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure.” Citing the language of the statute, defendant makes two arguments. First, defendant contends that “inspection” is not an enumerated activity and second, that plaintiff’s inspection involved no more than routine maintenance. Plaintiff, on the other hand, asserts
 
 *881
 
 that the inspection was performed in the context of “altering” the building. We address these contentions in turn.
 

 In asserting that the inspection falls outside of section 240, defendant relies principally on
 
 Martinez v City of New York
 
 (93 NY2d 322 [1999]). There, an inspector suffered an injury while checking for asbestos in schools. The inspection was the prelude to an asbestos removal project. The purpose of the examination was to determine whether conditions warranted removal work, and inspection was to end before any asbestos removal would begin. The City employed one contractor to carry out the inspection and another to do the removal. We held that the “merely investigatory” inspection phase fell outside section 240 (1)
 
 (id.
 
 at 326). The Court emphasized that the separate, sequential phases involved different employees working for different contractors. Under these circumstances, we held the inspections too remote from any covered work to fall within the statute’s ambit.
 

 Unlike
 
 Martinez,
 
 the work here did not fall into a separate phase easily distinguishable from other parts of the larger construction project. Plaintiffs inspection was not in anticipation of AWL’s work, nor did it take place after the work was done. The inspections were ongoing and contemporaneous with the other work that formed part of a single contract. The employees who conducted inspections also performed other, more labor-intense aspects of the project. Moreover, plaintiff worked for a company that was carrying out a contract requiring construction and alteration — activities covered by section 240 (1). This contrasts with the asbestos inspector in
 
 Martinez,
 
 who did not work for the company that would actually remove the asbestos.
 

 In certifying this case to our Court, the Second Circuit questioned whether
 
 Joblon v Solow
 
 (91 NY2d 457, 465 [1998]) bars plaintiffs recovery. There, we looked to the “time of injury” to determine whether plaintiffs work fell within section 240 (1). Defendant would have us read that phrase in an overly literal manner. In our view, however, the words must be applied in context. At one extreme, a construction worker who, between hammer strokes, pauses to see where to hit the next nail is at that moment “inspecting.” But this is very different from an inspection conducted by someone carrying a clipboard while surveying a possible construction site long before a contractor puts a spade in the ground. Here, AWL employed the plaintiff mechanic substantially to perform work that involved alteration of a building, and, under the facts of this
 
 *882
 
 case, he enjoyed the protection of section 240 (1) even though he was inspecting, or more precisely, climbing a ladder, at the moment of the accident.
 

 While we have held that job titles are not dispositive
 
 (see Joblon,
 
 91 NY2d at 465-466), the facts support the conclusion that plaintiff — while working as a mechanic — undertook the kind of work the Legislature intended to protect under section 240 (1). Although at the instant of the injury he was inspecting and putting the finishing touches on what he had altered, he had done heavier alteration work on other days at the same job site on the same project. He was a member of a team that undertook an enumerated activity under a construction contract, and it is neither pragmatic nor consistent with the spirit of the statute to isolate the moment of injury and ignore the general context of the work. The intent of the statute was to protect workers employed in the enumerated acts, even while performing duties ancillary to those acts.
 

 As for defendant’s second argument, we agree that section 240 (1) does not cover routine maintenance done outside the context of construction work. Plaintiff, however, argues that the accident occurred while he engaged in “alteration,” an enumerated activity. Essentially, routine maintenance for purposes of the statute is work that does not rise to the level of an enumerated term such as repairing or altering. We agree with plaintiff. He was engaged in a process involving the building’s alteration, and his work went beyond mere maintenance.
 

 Joblon
 
 (91 NY2d at 465) is instructive. There, we held that “altering” for purposes of section 240 (1) “requires making a
 
 significant
 
 physical change to the configuration or composition of the building or structure.” We determined that extending wiring and chiseling a hole through a concrete wall was enough to constitute “altering.” Moreover, in
 
 Panek v County of Albany
 
 (99 NY2d 452 [2003]), we applied the
 
 Joblon
 
 “altering” analysis to the removal of air handlers from a building before its demolition. The Court concluded that the plaintiff “was clearly engaged in a significant physical change to the building when he was injured, thus satisfying the
 
 Joblon
 
 standard for an alteration”
 
 (id.
 
 at 458). Here, constructing walls and leveling floors are at least as significant as drilling through concrete, the threshold for altering we identified in
 
 Joblon.
 
 AWL’s project also has much in common with the work carried out in
 
 Panek.
 
 Applying
 
 Joblon
 
 and
 
 Panek,
 
 we are satisfied that AWL’s work involved building alteration, and therefore was not routine maintenance.
 

 
 *883
 
 In sum, the question whether a particular inspection falls within section 240 (1) must be determined on a case-by-case basis, depending on the context of the work. Here, a confluence of factors brings plaintiffs activity within the statute: his position as a mechanic who routinely undertook an enumerated activity, his employment with a company engaged under a contract to carry out an enumerated activity, and his participation in an enumerated activity during the specific project and at the same site where the injury occurred. Accordingly, the certified question should be answered in the affirmative.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Graffeo and Read concur.
 

 Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in the affirmative.
 

 *
 

 We note that plaintiff made other claims in addition to Labor Law § 240 (1). Pursuant to the certification, however, we address only whether plaintiff’s activities fall within the scope of section 240 (1). We have not been asked and do not address whether defendant violated section 240 (1) or whether any violation was a proximate cause of the injury.