OPINION OF THE COURT
Edward H. Lehner, J.
On the various motions by defendants for summary judgment dismissing the action as against them, I am faced with determining a constantly recurring issue in cases under the Labor Law as to whether the work plaintiff was performing at the time of his injury was “routine maintenance” and thus not covered by Labor Law § 240 (1), or a “repair,” which is one of the enumerated activities set forth in the section,* as well as determining the question, that has been raised in several cases, as to whether a fall from a nondefective ladder caused by an electric shock can result in liability under said section.
Here, plaintiff’s employer, fifth-party defendant Donnelly Mechanical Corp., was called by defendant Apple Computer, Inc. on August 18, 2004 to attend to a malfunctioning air-conditioning system in its leased premises (the premises) in the Citicorp Building on East 53rd Street. The premises had been renovated the prior year and defendant J.T. Magen and Co. had been the general contractor on the job.
Plaintiff testified that when he arrived at the premises on August 18, he climbed up an A-frame ladder and pushed up the tile on the dropped ceiling, breaking a nipple that was on the condenser’s water pipe. He then came down and ordered a part to replace the broken nipple. While waiting for the part, he investigated the condition of the air-conditioning system and determined that the reason it was not functioning was because *969 of a defect in the water pump system. When the needed part arrived, he again ascended the ladder and claims that he fell 8 to 10 feet as a result of a shock received from touching a loose exposed wire in the ceiling. The ladder itself did not fall and the incident was unwitnessed. Plaintiff stated that after the accident he went back up the ladder and put a nut on the exposed wire.
The evidence indicates: that the contracted-for construction work at the premises was completed months before the accident; that Magen was no longer functioning as a general contractor at the premises on August 18, 2004; that Magen had not requested Donnelly to send personnel to the site on that day; and that Magen had no supervisory control over plaintiff and was unaware that he was at the premises on that day. Hence, it cannot be held liable to plaintiff under section 240 (1). Any work that plaintiff was then performing was, in any event, outside the scope of the general contractor’s contract. (See Butt v Bovis Lend Lease LMB, Inc., 47 AD3d 338, 340 [1st Dept 2007]; Balthazar v Full Circle Constr. Corp., 268 AD2d 96, 98 [1st Dept 2000].) Therefore, the claim against it under section 240 (1) is dismissed, as are the claims against it under Labor Law § 200 and common-law negligence.
Also, since the accident did not occur in the course of “construction, excavation or demolition,” it is not covered by Labor Law § 241 (6) (Nagel v D & R Realty Corp., 99 NY2d 98, 102 [2002]; Esposito v New York City Indus. Dev. Agency, 1 NY3d 526, 528 [2003]; Maes v 408 W. 39 LLC, 24 AD3d 298 [1st Dept 2005]). Hence, plaintiff’s claim under said section is dismissed as against all defendants.
In light of such dismissals, there is no objection to the motions for the dismissal of the third-, fourth- and fifth-party indemnity claims (tr at 38, 48), which are therefore also dismissed. It is noted that there is no motion before the court with respect to sixth-party defendant (tr at 60).
In light of plaintiffs testimony that an exposed wire in the dropped ceiling caused him to fall, and evidence that defendant Pomalee Electric Co., Inc. performed work on that ceiling, its motion to dismiss plaintiff’s claim based on common-law negligence and Labor Law § 200 is denied. While Pomalee argues that the wire it installed was of low voltage and could not have caused the shock plaintiff allegedly sustained, I cannot determine that issue as a matter of law.
The remaining claim to be determined on these motions is whether Apple may be liable under section 240 (1) based on the *970 assertion that the work plaintiff performed was a “repair” and thus covered by the section.
Work that involves “replacing components that require replacement in the course of normal wear and tear” constitutes “routine maintenance” and would not be a “repair” as that term is used in section 240 (1) (Esposito v New York City Indus. Dev. Agency at 528). To constitute a “ ‘repair’ under Labor Law § 240 (1), there must be proof that the machine or object being worked upon was inoperable or not functioning properly” (Goad v Southern Elec. Intl., 263 AD2d 654, 655 [3d Dept 1999]). Where an “injured plaintiff was engaged in the repair of a non-functioning air conditioner . . . , [he] was engaged in the type of ‘repair’ work which is specifically protected under Labor Law § 240 (1)” (Sprague v Peckham Materials Corp., 240 AD2d 392, 393 [2d Dept 1997]).
Thus, the essence of the distinction is that if the only work is the replacement of a component caused by normal wear and tear, it is “routine maintenance,” but if the object involved was inoperable or malfunctioning for other reasons, it is a “repair.” (See also Smith v Shell Oil Co., 85 NY2d 1000 [1995]; Arevalo v Nasdaq Stock Mkt., Inc., 28 AD3d 242 [1st Dept 2006]; Papapietro v Rock-Time, 265 AD2d 174 [1st Dept 1999]; Jani v City of New York, 284 AD2d 304 [2d Dept 2001]; Leubner v McNeil, 261 AD2d 777 [3d Dept 1999].) Clearly, the work that needed to be performed here to remedy the problem with the air conditioner was a “repair” as the unit was purportedly malfunctioning.
Apple asserts that when it called Donnelly to have a worker come to the premises, it was only requesting that Donnelly determine the reason for the nonfunctioning of the air-conditioning unit. However, the question as to what tasks were to be performed at the premises raises an issue of fact. (See in general Prats v Port Auth. of N.Y. & N.J., 100 NY2d 878, 883 [2003] [“whether a particular inspection falls within section 240 (1) must be determined on a case-by-case basis, depending on the context of the work”]; Caraciolo v 800 Second Ave. Condominium, 294 AD2d 200, 202 [1st Dept 2002] [“Inspection of an integral part of the building in furtherance of repairing an apparent malfunction is . . . clearly within the scope of the activities covered by section 240 (1) of the Labor Law]; Short v Durez Div.-Hooker Chems. & Plastic Corp., 280 AD2d 972, 973 [4th Dept 2001]; Craft v Clark Trading Corp., 257 AD2d 886, 887 [3d Dept 1999] [a fall by the plaintiff “in furtherance of his *971 investigation regarding the cause of an undisputed malfunction in the middle of the night” constituted an injury while performing a “repair” under section 240 (1)].)
Finally, coming to the issue of whether the fall as a result of an electric shock can result in liability under section 240 (1), the First Department, in denying summary judgment in Weber v 1111 Park Ave. Realty Corp. (253 AD2d 376 [1998]), quoted the Second Department conclusion in Gauge v Tilles Inv. Co. (220 AD2d 556, 558 [1995]), that
“the fact that the plaintiff fell off of the ladder only after he sustained an electric shock does not preclude recovery under Labor Law § 240 (1), . . . [but] the plaintiff is not entitled to summary judgment ... as there are questions of fact as to whether, inter alia, the ladder, which was not shown to be defective in any way, failed to provide proper protection, and whether the plaintiff should have been provided with additional safety devices” (253 AD2d at 378).
Similar holdings that an issue of fact is raised when a worker falls off a nondefective ladder as a result of an electric shock were rendered in Karapati v K.J. Rocchio, Inc. (12 AD3d 413 [2d Dept 2004]); Donovan v CNY Consol. Contrs. (278 AD2d 881 [4th Dept 2000]); and Grogan v Norlite Corp. (282 AD2d 781, 782-783 [3d Dept 2001] [“we note that under circumstances essentially identical to the case at bar, each of the other Departments has held that a question of fact exists on the issue of liability under Labor Law § 240 (1) when a plaintiff worker falls from an A-frame stepladder as a result of an electric shock” (citing the foregoing cases)]).
However, this year in Vukovich v 1345 Fee, LLC (58 AD3d 410, 410 [2009]), without mentioning any of the above-cited cases, the First Department granted summary judgment to plaintiff under facts similar to those in said cases, stating merely that the “ladder provided to plaintiff was inadequate to prevent him from falling five to seven feet to the floor after being shocked, and was a proximate cause of his injuries.” That action was then tried before me and resulted in a jury award to plaintiff of over $5,000,000. However, shortly after the award, the First Department recalled its prior determination and issued a new decision (61 AD3d 533 [2009]), which adhered to its prior grant of summary judgment to plaintiff, but withdrew the portion of the prior decision that granted summary judgment on an indemnity claim, and determined that there were triable issues of fact on such claim.
*972 In view of the above, the motion of Apple to dismiss plaintiffs claim against it under section 240 (1) is denied. It is noted that plaintiff has not moved for summary judgment.
In conclusion, the Clerk shall enter judgment dismissing all claims against Magen and Donnelly, severing the remaining action.

 Research indicates that there are literally hundreds of cases where judges have had to wrestle with this issue. While recognizing that the courts are not policy makers, I continue to wonder, if the intent of the law is to protect workers employed at heights, why it should make any difference from a policy standpoint whether a worker was merely screwing in a light bulb or doing more.