OPINION OF THE COURT
Herbert Kramer, J.
Facts and Procedural History
Plaintiff John Gray worked at the Newtown Creek Water Pollution Control Plant (the facility), which was located at the intersection of Greenpoint Avenue and Kingsland Avenue in Brooklyn, New York. The facility was owned by the City. In 1994, upgrade work on the facility commenced. Hazen & Sawyer/Malcolm Pirnie Joint Venture (Hazen Sawyer) was the construction manager for all upgrade projects on the facility. One of the general contractors on the site was A.J. Pegno/Tully *1095 Construction Co. Joint Venture (Pegno/Tully), which was in charge of the “31 series” of contracts (plumbing and general work) (see transcript of Ernest Livingston, July 20, 2009, at 25-26, annexed as exhibit L to plaintiffs opposition papers).[1]
As a heavy on-site teamster steward employed by Pegno/Tully, Gray “challenged” trucks for union identification at the facility. He was responsible for requesting that truck drivers show their union card and dues receipt, and either approving drivers for entry into the facility to make a delivery, or denying them access to make the delivery if they were not union members. Additionally, plaintiffs responsibilities included operating vehicles on the construction site, which could be a dump truck moving dirt from one lot to another, or a flatbed truck moving materials. Pegno/Tully provided him with a red Chevy Silverado pickup truck to perform his steward duties.
On July 27, 2007, plaintiff drove his pickup truck to a location near the “Grit” building on the facility, and was parked there for a few minutes when he saw a green flatbed truck approaching. The truck turned onto a temporary road and left plaintiffs field of vision. Rather than drive to where the green truck had parked to request union identification, plaintiff decided to approach the driver on foot because “[i]t was a nice day.” As plaintiff was exiting his pickup truck, he stepped onto some wooden two-by-fours on the ground which were adjacent to the vehicle’s door on the driver’s side. According to plaintiff, the two-by-fours, which were nailed together, created a “ramp” that was used for walking up and down the steel curb and temporary roadway, as well as for bringing materials and gang boxes up and down from the curb.[2] The higher end of the ramp was toward the curb. When plaintiffs feet came into contact with the two-by-fours, the two-by-fours separated and he fell through to the road surface approximately 18 to 20 inches below him.
Gray commenced this action to recover for personal injuries allegedly sustained as a result of the incident, including, according to his bill of particulars, bilateral calcaneal fractures (heel fractures). Plaintiff asserts that defendants were negligent and violated Labor Law §§ 200, 240 (1) and § 241 (6).
*1096 The Parties’ Contentions
Defendants argue that plaintiffs Labor Law claims should be dismissed because plaintiff was not within the class of persons that the Labor Law was intended to protect, given that he was not performing work that was necessary or incidental to the erection of a structure pursuant to Labor Law § 240 (1) when the accident occurred, nor permitted or suffered to work on a building or structure under Labor Law §§ 200 and 241 (6). They further contend that they are entitled to summary judgment on the Labor Law § 240 (1) claim because Gray was exiting his vehicle when the accident occurred and there was no elevation-related hazzard. They also argue that the Labor Law § 241 (6) claim should be dismissed because the alleged Industrial Code violations upon which this claim is predicated are either inapplicable to the facts or were not actually violated. Additionally, they move to dismiss the Labor Law § 200 and common-law negligence claims on the grounds that defendants did not have notice of the allegedly dangerous or defective condition of the “ramp,” nor did they exercise supervision, direction or control over the activity that led to plaintiffs accident.
Plaintiff opposes the motion for summary judgment on the ground that the expert affidavit submitted on behalf of defendants is inadmissible because it contained legal conclusions that he was not qualified to make. He contends, contrary to defendants’ assertions, that he was in fact performing an activity protected by the Labor Law at the time of his accident, and cites numerous cases supporting that proposition. Specifically, he avers that his work was vital and integral to the construction work being performed on the facility, and that he was a member of a team engaging in an activity under a construction contract. He additionally maintains that liability under Labor Law § 240 (1) does apply to the collapse of the two-by-fours which served as a ramp, and also suggests that he was essentially using the ramp as a platform. Plaintiff opposes defendants’ motion for summary judgment with regard to Labor Law § 241 (6) by contending only that Industrial Code (12 NYCRR) § 23-1.22 (b) (2) and (3) were violated, are sufficiently specific to support such a claim, and are applicable to the instant facts.[3] Finally, plaintiff argues that the Labor Law § 200 claim should *1097 not be dismissed because defendants have not demonstrated that they did not have actual or constructive notice of the allegedly defective ramp.
In reply, defendants assert that the only new evidence offered by plaintiff in opposition to their motion was a discovery response that was not in admissible form. They also aver that their expert affidavit does not contain legal conclusions, but rather, serves to provide the court with professional and technical knowledge within the field of construction safety and. fall protection. Moreover, defendants argue that plaintiff disingenuously attempts to apply Labor Law § 240 (1) by calling the ramp a “platform,” even though he never testified to using it as such. They distinguish cases cited by plaintiff, in which courts found the ramps therein to pose elevation-related risks, by noting, inter alia, that plaintiff was merely using the ramp as a passageway, and that plaintiff does not argue that the lack of safety rails or curbs proximately caused his injuries. With respect to Labor Law § 241 (6), defendants aver that the cases cited by plaintiff regarding the remaining alleged violations do not conclude that said violations are indeed applicable to the ramps therein. Defendants also claim that plaintiffs sole evidence that the cited Industrial Code sections are applicable to the subject ramp is his attorney’s opposing affirmation. Finally, regarding the Labor Law § 200 and common-law negligence claims, defendants aver that they did not provide the ramp in question, insist that usage of the ramp was a method of work chosen by one of the contractors to move personnel or materials onto the sidewalk, and argue that they did not supervise, direct or control such method.
Discussion
The drastic remedy of summary judgment should be granted only where there are no triable issues of fact (see Pearson v Dix McBride, LLC, 63 AD3d 895 [2009]; Sillman v Twentieth *1098 Century-Fox Film Corp., 3 NY2d 395, 404 [1957]). The moving party on a motion for summary judgment has the burden of demonstrating “a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case” (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). Once the movant has made this showing, the burden of proof shifts to the party opposing the motion to produce evidentiary proof in admissible form to establish that material issues of fact exist which require a trial (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). “[M]ere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient” (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). The evidence presented on summary judgment must be scrutinized in the light most favorable to the party opposing the motion (Goldstein v County of Monroe, 77 AD2d 232, 236 [1980]). Accordingly, “[i]f there is any doubt about the existence of a triable issue of fact or if a material issue of fact is arguable, summary judgment should be denied” (Celardo v Bell, 222 AD2d 547, 548 [1995]).
(a) Applicability of the Labor Law
Defendants contend that Gray does not qualify within the class of persons the Labor Law was intended to protect because, at the time of his alleged accident, he was not performing work necessary and incidental to the erection or repair of a building or structure (see Pisciotta v St. John’s Hosp., 268 AD2d 465, 466 [2000], citing Shields v St. Marks Hous. Assoc., 230 AD2d 903, 904 [1996]). Defendants rely chiefly on Shields for their position that Labor Law § 240 (1) does not apply to the instant facts, and analogize Gray, a teamster steward who “challenged” delivery truck drivers for union identification, to the plaintiff in Shields, a night watchman/security guard hired by a contractor on the construction/renovation site therein. In Shields, the court found that the plaintiff failed to show that he was engaged in work necessary and incidental to the renovation work being performed on the building for purposes of Labor Law § 240 (l).[4]
“[Labor Law § 240 (1)] may be applicable despite the fact that the particular job being performed at the moment plaintiff was injured did not in and of itself constitute construction” *1099 (Campisi v Epos Contr. Corp., 299 AD2d 4, 6 [2002] [internal quotation marks omitted]). The Court of Appeals has stated that the analysis of whether a particular activity at issue falls within the purview of Labor Law § 240 (1) is on a case-by-case basis, and courts must look at the “general context of the work [being performed at the time of the accident]” (Prats v Port Auth. of N.Y. & N.J., 100 NY2d 878, 882 [2003]). The court in Prats reasoned that “[t]he inspections were ongoing and contemporaneous with the other work that formed part of a single contract” (id. at 881 [plaintiff, an assistant mechanic who was responsible for a variety of tasks for overhauling air-conditioning units, was injured when he fell from a ladder while preparing units for inspection]). The work performed must be “an integral part of the construction process” to be protected under Labor Law § 240 (1) (Simms v Elm Ridge Assoc., 259 AD2d 538, 539 [1999]; see also O’Hare v City of New York, 280 AD2d 458, 458 [2001]; Covey v Iroquois Gas Transmission Sys., 89 NY2d 952, 953-954 [1997]). Courts may also consider whether plaintiff was a “member of a team that undertook an enumerated activity under a construction contract” (Prats, 100 NY2d at 882).
Similarly, Labor Law § 241 (6) and § 200 protect only those plaintiffs who are (1) permitted or suffered to work on a building or structure, and (2) hired for that purpose (Passante v Peck & Sander Props., LLC, 33 AD3d 980, 980 [2006]; Mordkofsky v V.C.V. Dev. Corp., 76 NY2d 573, 576 [1990]). Further, the statutes afford protection only to those who are actually employed to work on a construction site and are engaged in the construction work; “[n]ot every employee lawfully on the property is necessarily affiliated with the construction work ... or is otherwise frequenting the premises within the meaning of Labor Law § 241 (6)” (Yong Ju Kim v Herbert Constr. Co., 275 AD2d 709, 711 [2000] [citations and internal quotation marks omitted]). The accident must have arisen in the construction context for liability to attach under Labor Law § 241 (6) (see Bennett v Fairchild Republic Charter, 298 AD2d 418, 419 [2002] [plaintiff was not within the class of persons afforded protection under Labor Law § 240 (1) and § 241 (6) and the accident did not arise in a construction context]).
The task in which Gray was engaged at the instant of his alleged accident — “challenging” a delivery truck driver for union identification — is not “necessary and incidental to the erection or repair of a building or structure” (Shields, 230 AD2d at 904; *1100 Pisciotta, 268 AD2d at 466); Gray was not doing anything directly related to the construction itself at the time of the accident (cf. Simms, 259 AD2d 538 [1999] [where deliveryman transporting a washer/dryer unit to be installed as part of construction of condominium was-found to be protected under the Labor Law]; Williams v G.H. Dev. & Constr. Co., 250 AD2d 959 [1998] [where deliveryman transporting a tub and shower unit to an apartment under construction was found to be protected under the Labor Law]). However, the court must consider the entirety of plaintiffs role on the construction site. In this regard, we recognize that plaintiff was not merely someone who checked identification on the construction site; rather, he was a member of the Pegno/Tully team that performed construction pursuant to the “31 series of contracts” {see Prats, 100 NY2d at 882). Given the greater context of his duties as a steward, namely, driving vehicles on the site to move construction materials, the court finds that plaintiffs role went beyond that of the night watchman/security guard in Shields, and was necessary and incidental to the ongoing construction performed on the facility. Thus, plaintiff is within the class of workers whom Labor Law § 240 (1) was intended to protect (see id.). Similarly, the court finds that plaintiff was both permitted or suffered to work on a building or structure for purposes of applying Labor Law § 241 (6) (see e.g. Griffin v New York City Tr. Auth., 16 AD3d 202 [2005]).
(b) Labor Law § 240 (1) Claim
Labor Law § 240 (1), commonly called the “Scaffolding Law,” provides in pertinent part that
“[a]ll contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.”
The statute imposes a nondelegable duty upon owners, contractors, and their agents to provide adequate safety measures at the work site and is liberally construed to accomplish its purpose of placing the ultimate responsibility for safety practices on the owner and general contractor rather than on individual workers *1101 who are “scarcely in a position to protect themselves from accident” (Zimmer v Chemung County Performing Arts, 65 NY2d 513, 520 [1985] [citation and internal quotation marks omitted], rearg denied 65 NY2d 1054 [1985]). This duty is “nondelegable and ... an owner is liable for a violation of the section even though the job was performed by an independent contractor over which it exercised no supervision or control” (see Gordon v Eastern Ry. Supply, 82 NY2d 555, 559 [1993] [citation and internal quotation marks omitted]).
Building owners and contractors under this provision are absolutely liable when a violation of section 240 (1) proximately causes a worker’s injuries attributable to falls from ladders, scaffolding, or other elevation devices that do not provide proper protection against such “harm directly flowing from the application of the force of gravity to an object or person ” (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501 [1993] [citation and internal quotation marks omitted]). Accordingly, a plaintiff must prove that the statute was violated and that the violation was a proximate cause of the injuries sustained (see Camlica v Hansson, 40 AD3d 796, 797 [2007]; Zimmer, 65 NY2d at 519).
Summary judgment must be denied when factual questions remain regarding whether a plaintiff’s own actions were the sole proximate cause of the accident (see Weininger v Hagedorn & Co., 91 NY2d 958, 960 [1998], rearg denied 92 NY2d 875 [1998]; see also Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d 280, 290 [2003]). Proximate cause is established only where a “defendant’s act or failure to act as the statute requires was a substantial cause of the events which produced the [plaintiffs] injuries” (Gordon, 82 NY2d at 561-562 [citation and internal quotation marks omitted]; Ekere v Airmont Indus. Park, 249 AD2d 104, 105 [1998]; Rodriguez v Forest City Jay St. Assoc., 234 AD2d 68, 69 [1996]). Additionally, although a plaintiffs alleged contributory or comparative negligence is not a defense to a cause of action under Labor Law § 240 (1) (see Zimmer, 65 NY2d at 521), such a cause of action will not stand where the plaintiffs own conduct was the sole proximate cause of his or her injuries (see Blake, 1 NY3d at 289-290; see also Tweedy v Roman Catholic Church of Our Lady of Victory, 232 AD2d 630, 630 [1996], lv denied 90 NY2d 810 [1997]).
Courts have held that the distance which a plaintiff falls from an elevated height is irrelevant (see McGarry v CVP 1 LLC, 55 AD3d 441 [2008]; Megna v Tishman Constr. Corp. of Manhat *1102 tan, 306 AD2d 163, 164 [2003]; Siago v Garbade Constr. Co., 262 AD2d 945, 945 [1999]). Falls from ramps and platforms 18 inches high, for example, and from even lower heights, have been deemed within the purview of the statute (see e.g. Arrasti v HRH Constr. LLC, 60 AD3d 582 [2009] [holding that a ramp, which was 18 inches below the hoist platform and the sole means of access to the concrete floor on a construction site, constituted a device to protect against an elevation-related risk within the meaning of Labor Law § 240 (1)]). However, the object must nevertheless be used as the functional equivalent of a ladder, scaffold, hoist or other safety device enumerated in the statute in order to be deemed relevant for Labor Law § 240 (1) purposes (Paul v Ryan Homes, 5 AD3d 58, 60 [2004]; Straight v McCarthy Bros. Co., 222 AD2d 775, 776 [1995]).
Here, the court finds that Gray was not using the subject ramp as the functional equivalent of an enumerated safety device for plaintiff’s benefit in his work. Rather, Gray used the ramp as a step, or like a passageway, while exiting his pickup truck, en route to “challenging” the driver of the green truck for union identification. Such usage is not protected under Labor Law § 240 (1) (see Donohue v CJAM Assoc., LLC, 22 AD3d 710, 712 [2005]; Paul, 5 AD3d at 60; Straight, 222 AD2d at 776; cf. Missico v Tops Mkts., 305 AD2d 1052, 1052 [2003] [court found that plaintiff was subjected to an elevation-related risk because the ramp was a tool used in the performance of the plaintiff’s work and was not merely a passageway from one place of work to another], citing Ryan v Morse Diesel, 98 AD2d 615, 616 [1983]). The ramp happened to be there when plaintiff alighted from his pickup truck. Even if plaintiff had used the ramp in the course of performing his other steward duties, such as driving vehicles on the facility, the ramp would not fall under the purview of the statute. The court further notes that plaintiff would have been able to walk over to the green truck to perform his duties without stepping bn the allegedly dangerous ramp (see Straight, 222 AD2d at 776). The two-by-fours merely provided an inclined pathway to the steel curb and temporary roadway, and the ramp was not required to be built in order to protect the site workers from any elevation risk (cf. Birbilis v Rapp, 205 AD2d 569 [1994] [where plaintiff and other workers had to walk on the allegedly hazardous sidewalk bridge in order to retrieve tools, and therefore Labor Law § 240 (1) required that the bridge be constructed so as to provide the workers with “proper protection”]). Accordingly, that branch of defendants’ *1103 motion seeking dismissal of the Labor Law § 240 (1) claim should be granted.
(c) Labor Law § 241 (6) Claim
Labor Law § 241 (6) provides in pertinent part that “[a]ll areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places.” The statute, enacted to provide workers engaged in construction, demolition, and excavation work with reasonable and adequate safety protections, places a nondelegable duty upon owners and contractors to comply with the specific safety regulations set forth in the Industrial Code (Ross, 81 NY2d at 501-502). Liability under the statute may be imposed on an owner or general contractor even in the absence of supervision or control over the work performed (id. at 502).
Thus, a plaintiff supports a Labor Law § 241 (6) cause of action by demonstrating that his or her injuries were proximately caused by a violation of an Industrial Code rule applicable to the circumstances of the accident and setting forth a concrete standard of conduct rather than a mere reiteration of common-law principles (id.; Ares v State of New York, 80 NY2d 959, 960 [1992]; Adams v Glass Fab, 212 AD2d 972, 973 [1995]). However, Labor Law § 241 (6) is not self-executing. In order to show a violation of this statute, and withstand a defendant’s motion for summary judgment, plaintiff must demonstrate that the defendant violated a specific, applicable, implementing regulation of the Industrial Code, rather than a provision containing only generalized requirements for worker safety (Ross, 81 NY2d at 501-502).
Industrial Code § 23-1.22 (b) (2) applies to runways and ramps for the use of persons only.[5] In arguing that this section is inapplicable, defendants contend that no ramp is necessary to access a sidewalk that is, at most, 20 inches high and can be stepped onto directly. Additionally, they claim that plaintiff was *1104 descending down the ramp rather than trying to access the sidewalk. Defendants’ expert witness also opines that section 23-1.22 (b) (2) is not applicable because the ramp was not intended to be used by persons only; vehicles were to use it as well. The court finds that defendants’ showing is insufficient to establish, prima facie, that section 23-1.22 (b) (2) is not applicable to the instant facts. They have presented no evidence to support their allegation that the ramp was not used by persons. Plaintiffs testimony that he had in fact seen similar ramps all over the facility used by individuals for moving materials on and off the curb (see Gray transcript at 161) is sufficient to raise a triable issue of fact regarding the ramp’s usage and whether the regulation applies. Accordingly, that branch of defendants’ motion for summary judgment seeking dismissal of the Labor Law § 241 (6) claim, as predicated on a violation of Industrial Code § 23-1.22 (b) (2), must be denied.
In contrast, the court finds that the branch of defendants’ motion for summary judgment seeking dismissal of the Labor Law § 241 (6) as predicated on a violation of Industrial Code § 23-1.22 (b) (3) should be granted. Industrial Code § 23-1.22 (b) (3) deals with runways and ramps constructed for use by wheelbarrows, power buggies, hand carts or hand trucks.[6] Defendants have met their prima facie burden of demonstrating that their alleged violation of section 23-1.22 (b) (3) was not a proximate cause of plaintiffs accident, given that plaintiff was not using a wheelbarrow, power buggy, hand cart or hand truck at the time it occurred.
(d) Labor Law § 200 and Common-Law Negligence Claims
Labor Law § 200 codifies a common-law duty placed upon owners and contractors to provide employees with a safe place to work (Yong Ju Kim v Herbert Constr. Co., 275 AD2d 709, 712 *1105 [2000]; Lombardi v Stout, 80 NY2d 290, 294 [1992]). Imposing liability on an owner or contractor under a Labor Law § 200/ common-law negligence cause of action requires some evidence that the owner or contractor controlled and supervised the manner in which the underlying work was performed, or that the owner or contractor created or had actual or constructive notice of the alleged dangerous condition which caused the accident (Bradley v Morgan Stanley & Co., Inc., 21 AD3d 866, 868 [2005]; Aranda v Park E. Constr., 4 AD3d 315, 316 [2004]; Akins v Baker, 247 AD2d 562, 563 [1998]). No liability attaches to the owner where the defect or dangerous condition arises from the worker’s own actions and the owner exerts no supervisory control over the work (see Ruccolo v City of New York, 278 AD2d 472, 474 [2000]); for liability to attach there must be evidence that the owner had input into how that operation was being performed (Chowdhury v Rodriguez, 57 AD3d 121, 128 [2008]; Lombardi, 80 NY2d 290 [1994]). However, where the alleged accident is the result of a defective or dangerous condition, plaintiff must show that the owner either created or had actual or constructive knowledge of that condition, irrespective of whether defendant supervised the work (see Ortega v Puccia, 57 AD3d 54, 61 [2008], citing Azad v 270 5th Realty Corp., 46 AD3d 728, 730 [2007], lv denied 10 NY3d 706 [2008]; Kerins v Vassar Coll., 15 AD3d 623, 626 [2005]; Kobeszko v Lyden Realty Invs., 289 AD2d 535, 536 [2001], lv denied 98 NY2d 602 [2002]; Giambalvo v Chemical Bank, 260 AD2d 432, 433 [1999]). “Although property owners often have a general authority to oversee the progress of the work, mere general supervisory authority ... for the purpose of overseeing the progress of the work and inspecting the work product is insufficient to impose liability under Labor Law § 200” (Ortega, 57 AD3d at 62). With respect to subcontractors, they may be liable, as discussed earlier, only if they act as agents of the owner or general contractor with the authority to supervise and control (see Sabato v New York Life Ins. Co., 259 AD2d 535, 536-537) [1999]).
Although defendants discuss the issue of supervision and control, Gray’s injuries arose from a purported unsafe condition present at the construction site — the faulty ramp made of two-by-fours which collapsed under him. The applicable standard of liability therefore requires the inquiry of whether defendants created or had actual or constructive notice of the condition (Ortega, 57 AD3d at 61). Defendants also bear the initial burden of making a prima facie showing of entitlement to judgment as *1106 a matter of law by coming forward with competent proof refuting the allegations of the complaint as amplified by the bill of particulars (Reisch v Amadori Constr. Co., 273 AD2d 855, 857 [2000]). The bill of particulars alleges, inter alia, that defendants knew about the defective ramp, but nevertheless allowed such a ramp to exist and remain on the facility. Plaintiff does not dispute that defendants did not create the allegedly defective ramp. Defendants also aver that they did not receive any complaints about the subject ramp, nor were there any facts from which a jury could infer constructive notice. However, defendants’ papers lack any affirmative evidentiary proof regarding their lack of notice. The court thus finds that the branch of defendants’ motion for summary judgment dismissing the Labor Law § 200 and common-law negligence claims should be denied.
Accordingly, it is ordered that the branch of defendants’ motion seeking summary judgment on the Labor Law § 240 (1) claim is granted; and it is further ordered that the branch of defendants’ motion seeking summary judgment on the Labor Law § 241 (6) claim is granted only to the extent it is predicated on a violation of Industrial Code (12 NYCRR) § 23-1.22 (b) (3); and it is further ordered that the branch of defendants’ motion seeking summary judgment on the Labor Law § 200 and common-law negligence claims is denied.

. Pegno/Tully was the general contractor responsible for constructing the digestion facilities in the centrifuge building (id. at 19).

. Defendants contest plaintiffs characterization of the wood as a “ramp,” given plaintiffs deposition testimony that he never actually saw anyone using it in such a manner (see e.g. transcript of John Gray, Apr. 17, 2009, at 76, 82, annexed as exhibit K to defendants’ motion).

. Plaintiff does not challenge the parts of defendants’ motion seeking summary judgment regarding the Labor Law § 240 (1) with respect to Industrial Code § 23-1.7 (f) (vertical passage); § 23-1.22 (b) (1) (runways and ramps constructed for use by motor vehicles) and (4) (runways and ramps *1097 constructed for use by persons and which extend to a height of over four feet); § 23-1.22 (c) (platforms used as a work area); § 23-1.30 (illumination); and § 23-1.33 (persons passing by construction, demolition or excavation operations). Therefore, plaintiffs Labor Law § 241 (6) claim, as predicated on those regulations, is deemed abandoned (see Keane v Chelsea Piers, L.P., 16 Misc 3d 1116[A], 2007 NY Slip Op 51443[U], *7 [2007], citing Genovese v Gambino, 309 AD2d 832, 833 [2003] [where plaintiff did not oppose that branch of defendant’s summary judgment motion dismissing the wrongful termination cause of action, his claim that he was wrongfully terminated was deemed abandoned]).

. The court in Shields also found that Labor Law § 241-a, which relates to the protection of workmen in elevator shaftways, hatchways, and stairwells, was inapplicable because plaintiff failed to make a showing that he was engaged in work on a building or structure.

. Industrial Code § 23-1.22 (b) (2) provides, in pertinent part:
“Runways and ramps constructed for the use of persons only shall be at least 18 inches in width and shall be constructed of planking at least two inches thick full size or metal of equivalent strength. Such surface shall be substantially supported and braced to prevent excessive spring or deflection. Where planking is used it shall be laid close, butt jointed and securely nailed.”

. Industrial Code § 23.1-22 (b) (3) provides, in pertinent part:
“Runways and ramps constructed for the use of wheelbarrows, power buggies, hand carts or hand trucks shall be at least 48 inches in width. Such runways and ramps shall be constructed of planking at least two inches thick full size or metal of equivalent strength. Such runways and ramps shall be substantially supported and braced to prevent excessive spring or deflection. Where planking is used on such runways and ramps, it shall be laid close, butt jointed and securely nailed. Such runways and ramps shall be provided with timber curbs at least two inches by eight inches full size, set on edge and placed parallel to, and secured to, the sides of such runways and ramps. Bracing for such runways and ramps shall be installed at a maximum of four foot intervals.”