Preston v APCH, Inc. (2019 NY Slip Op 06236)





Preston v APCH, Inc.


2019 NY Slip Op 06236


Decided on August 22, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 22, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, LINDLEY, DEJOSEPH, AND NEMOYER, JJ.


165 CA 18-01645

[*1]TRACY PRESTON, AS ADMINISTRATOR OF THE ESTATE OF ERIC S. LEHMAN, DECEASED, PLAINTIFF-RESPONDENT,
v
APCH, INC., ALSTOM POWER, INC., DEFENDANTS-APPELLANTS, AND COMBUSTION ENGINEERING, INC., DEFENDANT. 






RUPP BAASE PFALZGRAF CUNNINGHAM LLC, BUFFALO (JILL L. YONKERS OF COUNSEL), FOR DEFENDANTS-APPELLANTS AND DEFENDANT.
PULOS & ROSELL, LLP, HORNELL (WILLIAM W. PULOS OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 


 Appeal from an order of the Supreme Court, Allegany County (Thomas P. Brown, A.J.), entered December 21, 2017. The order denied the motion of defendants-appellants for summary judgment dismissing the amended complaint and granted plaintiff's cross motion for partial summary judgment on the issue of liability. 
It is hereby ORDERED that the order so appealed from is reversed on the law without costs, the cross motion is denied, the motion is granted and the amended complaint is dismissed.
Memorandum: Plaintiff commenced this action seeking damages for the wrongful death and conscious pain and suffering of plaintiff's decedent resulting from an accident that occurred while he was employed as a welder with defendant Alstom Power, Inc. (Alstom). Decedent and a coworker were assigned during the course of their employment to participate in the assembly of a rotor compartment weighing approximately five tons at an industrial facility in Wellsville, New York (plant) owned by defendant APCH, Inc. (APCH) (see Preston v APCH, Inc., 89 AD3d 65, 67-72 [4th Dept 2011]). The rotor compartment was being assembled to fulfill Alstom's contract with a customer that owned and operated a power plant in Bow, New Hampshire for the replacement of certain components of the customer's air preheater. Decedent was positioned in front of the rotor compartment and was comparing his welding work with that of the coworker when the rotor compartment fell from its stands thereby pinning him to the floor and causing his death.
Following motion practice, the only cause of action remaining for our consideration is that alleging a violation of Labor Law § 240 (1) against Alstom and APCH (defendants) inasmuch as plaintiff withdrew all other causes of action against those defendants and withdrew all causes of action against defendant Combustion Engineering, Inc. On this appeal, defendants contend that Supreme Court erred in denying their motion for summary judgment dismissing the amended complaint and granting plaintiff's cross motion for partial summary judgment on the issue of liability. We agree.
"Labor Law § 240 (1) imposes a nondelegable duty and absolute liability upon owners and contractors for failing to provide safety devices necessary for workers subjected to elevation-related risks in circumstances specified by the statute" (Soto v J. Crew Inc., 21 NY3d 562, 566 [2013]). "To recover, the [worker] must have been engaged in a covered activity— the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure' (Labor Law § 240 [1]; see Panek v County of Albany, 99 NY2d 452, 457 [2003])—and must [*2]have suffered an injury as the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential' (Runner v New York Stock Exch., Inc., 13 NY3d 599, 603 [2009])" (Soto, 21 NY3d at 566). The issue presented in this appeal concerns the first question, i.e., whether decedent was engaged in a covered activity (see id.).
Although "Labor Law § 240 (1) is to be construed as liberally as necessary to accomplish the purpose of protecting workers" (Wicks v Trigen-Syracuse Energy Corp., 64 AD3d 75, 78 [4th Dept 2009]; see Martinez v City of New York, 93 NY2d 322, 325-326 [1999]), "the language of Labor Law § 240 (1) must not be strained' to accomplish what the Legislature did not intend" (Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d 280, 292 [2003], quoting Martinez, 93 NY2d at 326; see Bish v Odell Farms Partnership, 119 AD3d 1337, 1337-1338 [4th Dept 2014]; Wicks, 64 AD3d at 79; see generally Shannahan v Empire Eng'g Corp., 204 NY 543, 548 [1912]). "It is apparent from the text of Labor Law § 240 (1), and its history confirms, that its central concern is the dangers that beset workers in the construction industry" (Dahar v Holland Ladder & Mfg. Co., 18 NY3d 521, 525 [2012]; see Soto, 21 NY3d at 566). "[T]he purpose of the statute is to place ultimate responsibility for safety practices at building construction jobs where such responsibility . . . belongs' " (Dahar, 18 NY3d at 525). "While the reach of section 240 (1) is not limited to work performed on actual construction sites" (Martinez, 93 NY2d at 326; see Dahar, 18 NY3d at 525; Joblon v Solow, 91 NY2d 457, 464 [1998]), the statute does not extend so far as to cover a worker who performs "customary occupational work of fabricating" a component "during the normal manufacturing process" at a facility and is not involved in any construction project nor involved in renovation or alteration work on the facility (Jock v Fien, 80 NY2d 965, 966, 968 [1992]; see Davis v Wind-Sun Const., Inc., 70 AD3d 1383, 1383 [4th Dept 2010]; Solly v Tam Ceramics, Inc., 258 AD2d 914, 914 [4th Dept 1999]; Foster v Joseph Co., 216 AD2d 944, 944-945 [4th Dept 1995]; Warsaw v Eastern Rock Prods., 193 AD2d 1115, 1115 [4th Dept 1993]; see generally Dahar, 18 NY3d at 525-526).
Here, defendants' submissions established that Alstom made air preheaters at the plant and was in the business of supplying various components, including rotor compartments, for air preheaters based on individual specifications of customers such as power plants, oil refineries, and chemical plants. Decedent was employed as a welder by Alstom at the plant. As was routine, decedent and the coworker were following the plans and specifications prepared by an Alstom engineer to fabricate the subject rotor compartment. The specifications showed, for example, where to apply welds, and a supervisor or Alstom inspector would explain how to remedy any issues such as missing welds. Inasmuch as Alstom's business was supplying components for air preheaters, welders such as decedent and the coworker regularly fabricated rotor compartments similar to the one that they were working on at the time of the accident. It is undisputed that the rotor compartment upon which decedent was working was one of several sections that would be loaded on a truck and transported from the plant in Wellsville, New York to the customer's power plant in Bow, New Hampshire where the air preheater would be assembled. We conclude that defendants thus established that decedent was not engaged in a covered activity under Labor Law § 240 (1) inasmuch as he was performing his "customary occupational work of fabricating" and welding a rotor compartment "during the normal manufacturing process" at the plant in Wellsville, and was not involved in the construction project in New Hampshire nor involved in renovation or alteration work on the plant in Wellsville (Jock, 80 NY2d at 966, 968; see Davis, 70 AD3d at 1383; Solly, 258 AD2d at 914; Foster, 216 AD2d at 944-945; Warsaw, 193 AD2d at 1115).
Plaintiff nonetheless contends, and the court agreed, that defendants failed to establish that the work in which decedent was engaged was part of a normal manufacturing process rather than part of a construction project. We reject that contention.
First, contrary to the suggestion of plaintiff, the court, and the dissent, while there is evidence that the rotor compartment upon which decedent was working was of a different style than those previously produced in terms of size, shape, and weight, the fact that decedent was fabricating a rotor compartment that was customized to the customer's specifications and not of universal or uniform design does not transform the nature of the work from fabrication during the normal manufacturing process to a covered activity as part of a construction project. After all, Alstom's business model was to supply various components, including rotor compartments, based on individual specifications of customers, and welders such as decedent routinely followed [*3]such specifications in fabricating and welding those air preheater components (see Davis, 70 AD3d at 1383; see also Solly, 258 AD2d at 914; Foster, 216 AD2d at 944-945; Warsaw, 193 AD2d at 1115).
Second, as defendants correctly contend, the terminology used in the contract does not control the inquiry whether decedent was engaged in protected activity under Labor Law § 240 (1). "The critical inquiry in determining coverage under the statute is what type of work the plaintiff was performing at the time of the injury' " (Panek, 99 NY2d at 457, quoting Joblon, 91 NY2d at 465). Contrary to plaintiff's contention, while a contract may well provide evidence of the type of work that a worker was performing, the protection afforded by section 240 (1) is not invoked simply because a contract repeatedly uses the word "construction." Moreover, contrary to the dissent's suggestion, the fact that, pursuant to the contract here, Alstom provided technical assistance at the installation site is of no moment because the critical inquiry is the type of work that was performed by decedent (see Panek, 99 NY2d at 457), who had no responsibility for or involvement with the construction project in New Hampshire (see Davis, 70 AD3d at 1383; cf. Gallagher v Resnick, 107 AD3d 942, 944 [2d Dept 2013]; see also Flores v ERC Holding LLC, 87 AD3d 419, 420-421 [1st Dept 2011]).
Third, we agree with defendants that plaintiff's reliance on the affidavit of her expert engineer is misplaced inasmuch as the expert relied on the terminology used in the contract to a large extent and also provided impermissible legal conclusions (see Penda v Duvall, 141 AD3d 1156, 1157-1158 [4th Dept 2016]; see generally Singh v Kolcaj Realty Corp., 283 AD2d 350, 351 [1st Dept 2001]).
Based on the foregoing, we conclude that the court erred in denying defendants' motion for summary judgment dismissing the amended complaint and granting plaintiff's cross motion for partial summary judgment on the issue of liability. In light of our determination, we do not consider defendants' remaining contentions.
All concur except Whalen, P.J., and Lindley, J., who dissent and vote to affirm in the following memorandum: We respectfully dissent inasmuch as we would affirm the order of Supreme Court in its entirety. Contrary to the contention of defendants-appellants (defendants), plaintiff's decedent was engaged in an activity protected by Labor Law § 240 (1) at the time of the accident.
A determination whether a particular activity falls within the ambit of Labor Law § 240 (1) "must be determined on a case-by-case basis, depending on the context of the work" (Prats v Port Auth. of N.Y. & N.J., 100 NY2d 878, 883 [2003]; see Saint v Syracuse Supply Co., 25 NY3d 117, 124-125 [2015]; see generally Joblon v Solow, 91 NY2d 457, 464-465 [1998]). Further, although the majority's determination is based on the distinction between manufacturing and construction for the purpose of Labor Law, that distinction is not clearly defined, and we agree with the majority that the terminology used by either party to describe decedent's work is not dispositive of whether decedent was engaged in a protected activity at the time of the accident. Indeed, to manufacture or fabricate something is to "make" or "construct" it (American Heritage Dictionary 632, 1067 [4th ed 2000]) and the words themselves, out of context, are generic and interchangeable. Instead, a determination distinguishing manufacturing from construction for the purpose of invoking the statutory protection at issue must be based, not on mere semantics, but on the totality of circumstances under which the fabrication or construction is performed (see Prats, 100 NY2d at 883).
In our opinion, the majority takes too narrow a view of the work performed by plaintiff's decedent and his employer, defendant Alstom Power, Inc. (Alstom). Although the majority characterizes the business of Alstom as the mere fabrication of individual rotor compartments, Alstom's " customary business' " (Solly v Tam Ceramics, 258 AD2d 914, 914 [4th Dept 1999]) is the custom "designing and building" of air preheaters, which are stand-alone structures or "building[s]" consisting of a rotor assembly or assemblies within a support system. The rotor compartments that create a rotor assembly are not a universal or uniform design; instead, a rotor assembly can consist of one to forty-eight separate compartments that are then shipped to the construction site. Alstom's aftermarket engineering design manager testified at his deposition that the air preheater for which the decedent and his coworker were constructing rotor compartments is a multistory stand-alone structure consisting of two rotor assemblies that were [*4]originally designed and supplied by Alstom in 1959 and for which Alstom personnel designed the replacement rotor assemblies as part of the renovation project at issue. Further, although construction of the rotor assemblies began at an off-site facility in Wellsville, New York with the pre-assembly of rotor compartments, the one- to two-month on-site renovation of the air preheater was completed in New Hampshire under the supervision of Alstom personnel.
Thus, unlike the cases on which the majority relies, this is not a case where Alstom "was not engaged in any construction . . . project" at the time of the accident (Jock v Fien, 80 NY2d 965, 968 [1992]; cf. Dahar v Holland Ladder & Mfg. Co., 18 NY3d 521, 523 [2012]; Davis v Wind-Sun Constr., Inc., 70 AD3d 1383, 1383 [4th Dept 2010]; Solly, 258 AD2d at 914; Foster v Joseph Co., 216 AD2d 944, 944-945 [4th Dept 1995]; Warsaw v Eastern Rock Prods., 193 AD2d 1115, 1115 [4th Dept 1993]), or where Alstom's involvement could be deemed merely incidental to or attenuated from the renovation project at issue. The fabrication of the rotor compartments, themselves the primary components of a multistory stand-alone air preheater, "[does] not fall into a separate phase easily distinguishable from other parts of the larger construction project," i.e., the renovation of the air preheater (Prats, 100 NY2d at 881). Instead, "a confluence of factors brings [decedent's] activity within the statute: his position as a [welder] who routinely undertook an enumerated activity, his employment with a company engaged under a contract to carry out an enumerated activity, and his participation in an enumerated activity during the specific project" (id. at 883).
The majority nonetheless concludes that, while Alstom personnel were integrally involved in the renovation of the air preheater structure throughout the construction project, Labor Law § 240 (1) does not apply because decedent "had no responsibility for or involvement with the construction project in New Hampshire." Although the renovation project was not "at the same site where the injury occurred" (Prats, 100 NY2d at 883), the Court of Appeals has explicitly stated that "it is neither pragmatic nor consistent with the spirit of the statute to isolate the moment of injury and ignore the general context of the work" (id. at 882; see Saint, 25 NY3d at 124). The majority's distinction would preclude workers such as decedent from the protections of Labor Law § 240 (1) because his erection and alteration of the rotor compartment was performed at an ancillary location at the direction of Alstom's supervisors, but workers performing similar work on the rotor compartments at the direction of an Alstom supervisor during the on-site installation would fall within the ambit of the statute. That would constitute a distinction based solely on the location of the work, a distinction that the majority acknowledges is impermissible (see Martinez v City of New York, 93 NY2d 322, 326 [1999]; see also Dahar, 18 NY3d at 525; Joblon, 91 NY2d at 464), and would improperly "compartmentalize [decedent's] activity and exclude from the statute's coverage preparatory work essential to the enumerated act" (Saint, 25 NY3d at 125). In contrast, our recognition under the facts of this case that decedent and Alstom were actively involved in covered activities at the time of decedent's accident would not illogically expand the protection of Labor Law § 240 (1) beyond that intended by the legislature (cf. Dahar, 18 NY3d at 526).
We also reject defendants' contention, to the extent that it is properly before us (see Paul v Cooper, 45 AD3d 1485, 1486 [4th Dept 2007]), that the court erred in granting plaintiff's cross motion for partial summary judgment on liability on the Labor Law § 240 (1) cause of action because the rotor compartment on which decedent was working was not a "structure" within the meaning of the statute. We agree with the court that the approximately nine-foot-tall, five-ton steel rotor compartment that decedent was welding constituted a " piece of work artificially built up or composed of parts joined together in some definite matter' " (Lewis-Moors v Contel of N.Y., 78 NY2d 942, 943 [1991]; see Lombardi v Stout, 80 NY2d 290, 295 [1992]). Defendants' remaining contention is not properly before us inasmuch as it is raised for the first time on appeal (see Ciesinski v Town of Aurora, 202 AD2d 984, 985 [4th Dept 1994]).
Entered: August 22, 2019
Mark W. Bennett
Clerk of the Court