■ DAVID BELDING, Respondent, v VERIZON NEW YORK, INC., et al., Appellants. (And Other Actions.) [883 NYS2d 517]—

Order, Supreme Court, New York County (Debra A. James, J.), entered November 26, 2008, which granted plaintiff's motion for partial summary judgment on the issue of liability on his Labor Law § 240 (1) cause of action and denied defendants' cross motion for summary judgment dismissing that cause of action, affirmed, without costs.

Plaintiff, an installer, was injured in a fall from an A-frame ladder on May 25, 2004 in a building owned by defendant Verizon New York, Inc. Verizon had engaged defendant Tishman Interiors Corporation as the construction manager for a capital improvement that included a site hardening and security project at the building. According to the deposition of Tishman's assistant project manager, the project entailed the reconstruc-

tion of the building's main entrance as well as the installation of a security desk, cameras and card-read systems. Plaintiff's employer, Shatter Guard, was engaged as a subcontractor for the installation of a shatterproofing substance called bomb blast film on windows in the front and rear lobbies of the building. Although the bomb blast film was installed in April 2004, plaintiff had to do a reinstallation on the day of the accident in order to address complaints made by the architect.

Plaintiff made a prima facie showing of proximate cause under section 240 (1) with his unrefuted testimony that the ladder collapsed beneath him causing him to fall (see *Panek v County of Albany*, 99 NY2d 452, 458 [2003]).* Defendants, however, argue that plaintiff's work on the day of the accident was done purely to correct a cosmetic defect and did not, as plaintiff claims, constitute "altering," an activity enumerated under the statute. " '[A]ltering' within the meaning of Labor Law § 240 (1) requires making a *significant* physical change to the configuration or composition of the building or structure" (*Joblon v Solow*, 91 NY2d 457, 465 [1998]). *Prats v Port Auth. of N.Y. & N.J.* (100 NY2d 878 [2003]), which involved an assistant mechanic who fell from a ladder while readying air-conditioning units for inspection, is instructive. In discussing the applicability of section 240 (1) to the worker's activity, the Court of Appeals observed: "Although at the instant of the injury [plaintiff] was inspecting and putting the finishing touches on what he had altered, he had done heavier alteration work on other days at the same job site on the same project. He was a member of a team that undertook an enumerated activity under a construction contract, and it is neither pragmatic nor consistent with the spirit of the statute to isolate the moment of injury and ignore the general context of the work. The intent of the statute was to protect workers employed in the enumerated acts, even while performing duties ancillary to those acts" (*id.* at 882).

As noted above, the site hardening and security project was part of an overall capital improvement that included plaintiff's work as evidenced by the fact that his company, engaged as a subcontractor, was a member of the team involved in the alteration. Accordingly, we reject the dissent's and defendants' attempt to isolate the specific task plaintiff was engaged in at the time of the injury. Defendants' characterization of plaintiff's work as merely cosmetic is dispelled by the unchallenged evi-

---

* In this regard, we note that defendants' biomechanical expert, who disputes plaintiff's account of the accident, does not challenge the core assertion that the ladder buckled and fell. For this reason the expert's affidavit is insufficient to raise a triable issue of fact.

dence that bomb blast film changes the property of glass. Accordingly, plaintiff's employer was engaged to carry out a specific part of the alteration. It is also significant that plaintiff was reinstalling the bomb blast film at the behest of an architect, a professional who would generally be a key player in an alteration project. Construing section 240 (1) liberally so as to accomplish its purpose of protecting workers (*see Greenfield v Macherich Queens Ltd. Partnership*, 3 AD3d 429, 430 [2004], citing *Martinez v City of New York*, 93 NY2d 322, 326 [1999]), we find that plaintiff's reinstallation of the bomb blast film at the time of the accident was a protected activity under section 240 (1). *Martinez*, which the dissent also cites, is readily distinguishable. The plaintiff in that case was an environmental inspector not engaged in or employed by a company engaged in an activity enumerated in section 240 (1).

Defendants also fail to raise a triable issue of fact as to whether the ladder was "good enough to afford proper protection" and that plaintiff's own negligence was the sole proximate cause of the accident (*see Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 289 n 8 [2003]).

We have considered defendants' remaining arguments and find them to be without merit. Concur—Moskowitz, DeGrasse and Freedman, JJ.

Catterson, J.P., and McGuire, J., dissent in a memorandum by McGuire, J., as follows: Defendant Verizon New York, Inc. owns a building in midtown Manhattan and decided to have work performed on it to enhance safety and security. Verizon retained defendant Northern Bay Contractors as the general contractor of the project and defendant Tishman Interiors Corporation as the construction manager. The project, which began in the summer of 2003, included the reconstruction of the building's entranceway, and the installation in the lobby of a new security desk, turnstiles and access card readers, as well as security cameras throughout the building. Additionally, a polyester adhesive film was to be applied to approximately six windows in the building's two lobbies. This film was designed to absorb significant amounts of force (such as from an explosion), so as to both decrease the likelihood of glass shattering from exposure to force and, in the event that the glass should break, to help hold the broken glass within the window frame, thereby preventing shards of glass from injuring people or damaging property. The construction manager retained Shatter Guard, which was plaintiff's employer, to apply the film to the windows.

In April 2004, plaintiff applied the film to the interior portions of the windows in both the north and south lobbies. In

each lobby plaintiff applied the film to three windows; each window was several feet from the ground, and the middle window, which was above the doors to the building, was wider than the windows adjacent to it. To apply the film, plaintiff, with the assistance of a coworker, cleaned the window, cut the film to fit the window, pulled the liner off of the film, wet the back of the film, slid the film into place on the glass and used a squeegee to remove excess water from the film. Plaintiff and his coworker stood on a scaffold to slide the film into place and remove the excess water from the film. In addition to the scaffold, plaintiff used a box cutter to cut the film, a spray bottle containing soap and water to clean the windows, and a squeegee. Plaintiff and his coworker completed their task—applying the film to each of the six windows—in one day.

Although the application of the film to the windows was completed in April 2004, the project's architect requested that the film be adjusted on the center window in each lobby. According to plaintiff, "[t]he architect . . . didn't like that the seams [of the film] ran through the backs of the numbers of the [address of the building, which was printed on the center windows]." On May 25, 2004, accordingly, plaintiff and a coworker returned to the building to adjust portions of the film. To make the adjustments, plaintiff and the coworker needed to cut and peel away a portion of the film near the numbers of the address and reapply the film in a manner that would not obscure the numbers. The only tools they needed to perform this work were a box cutter, a squeegee and ladders (or a scaffold) to reach the area on the windows where the numbers of the address were printed.

Plaintiff and his coworker adjusted the film on the center window of the north lobby without incident. In performing that adjustment, plaintiff and his coworker used a pair of ladders, one that belonged to plaintiff and one that was obtained from the job site. The workers then went to the south lobby to adjust the film on the center window of that lobby. After peeling away a portion of the film near the numbers of the address and cutting a piece of film to replace it, plaintiff, standing on a ladder obtained from the job site, and his coworker, standing on the ladder belonging to plaintiff, attempted to test fit the new piece of film they were going to apply to the window. As they were doing so, the legs of the ladder on which plaintiff was standing "buckled" and plaintiff, who was approximately 10 feet above the ground, fell, injuring his right foot and leg.

Plaintiff commenced this action against defendants seeking damages under various provisions of the Labor Law, including

section 240 (1). Plaintiff moved for summary judgment on the issue of liability on that cause of action, and defendants cross-moved for summary judgment dismissing it. Supreme Court granted plaintiff's motion, denied defendants' cross motion, and this appeal ensued.

Labor Law § 240 (1) provides special protection to workers who are both exposed to an elevation-related risk and engaged in certain enumerated activities. One of those activities—the only one relevant to this appeal—is "altering" a building or structure. Defendants contend that the application of the film to the windows did not "alter" the building or the windows and therefore plaintiff was not protected under the statute. Defendants also contend that even if plaintiff had "altered" the building in April 2004 when he originally applied the film, he was not "altering" the building or the windows on May 25, 2004 when he returned to the premises to adjust portions of the film. Plaintiff argues that the application of the film to the windows "altered" the "physical properties of the glass" and "the manner in which the glass . . . would respond to explosive forces." Plaintiff also argues that the work performed on May 25, 2004 was an integral part of the ongoing security upgrade project—work that was ancillary to the "alterations" to the building. Thus, plaintiff asserts that he was engaged in "altering" the building on each of the two days he worked there.

The Court of Appeals' principal decision regarding the activity of "altering" a building or structure is *Joblon v Solow* (91 NY2d 457 [1998]). There, the plaintiff, an electrician, was employed by a company that served as the house electrician to a company that leased office space from the owner of the premises. The plaintiff was directed by his supervisor to install an electric wall clock in a room in the lessee's space. As the room in which the clock was to be installed did not have an electrical outlet, electrical wiring from an adjacent room needed to be extended to the room in which the clock was to be installed. To accomplish this, the plaintiff and his coworker needed to chop a hole through the concrete block wall separating the rooms and run wiring encased in conduit from the existing power source through the wall. The plaintiff and his coworker, working in the room with the existing power source, chiseled through the wall using a hammer and chisel. The coworker then went from that room to the room in which the clock was to be installed to receive from the plaintiff the electrical wire. The plaintiff fell from the unsecured ladder on which he was standing while attempting to pass the wire to his coworker.

The plaintiff brought a federal action against the owner and

lessee under, among other provisions, Labor Law § 240 (1), and the defendants impleaded the plaintiff's employer. The parties made various summary judgment motions with respect to the main action and the third-party action, but the core issue on those motions was whether the plaintiff was "altering" the building. The District Court concluded that he was not, and the Second Circuit certified to the Court of Appeals the question of whether the plaintiff was engaged in a protected activity.

Before the Court of Appeals, the plaintiff, consistent with the Third Department's decision in *Cox v International Paper Co.* (234 AD2d 757 [1996]), argued that a worker "alters" a building or structure under section 240 (1) whenever the activity the worker is performing "changes" the building or structure (*Joblon*, 91 NY2d at 464). Thus, the plaintiff maintained that he "altered" the building because the activity he performed changed the building, i.e., he chopped a hole in the concrete wall (*id.*). The defendants and third-party defendant contended that the context of the work leading to the injury was controlling, and that only when the work was performed as part of a building construction job should Labor Law § 240 (1) liability attach (*id.*). Because the work the plaintiff performed was not part of a building construction project, the defendants and third-party defendant argued that the plaintiff did not "alter" the building (*id.*).

The Court rejected both suggested constructions of "altering." With respect to the plaintiff's argument that the controlling inquiry was whether the activities the worker performed "changed" the building, the Court was "concerned that allowing every change in a structure to qualify as an alteration [would] give[ ] the statute too broad a reach. A task as simple and routine as hammering a nail could, taken literally, be viewed as a change in the structure. Adopting plaintiff's interpretation of the *Cox* rule if taken to its logical conclusion, would be tantamount to a ruling that all work related falls off ladders will fall within Labor Law Section 240" (*id.* [internal quotation marks omitted]). The Court also observed that defining every change in a building or structure as an alteration would be contrary to the Court's own precedents. Thus, the Court wrote, "Although the *Cox* court attempted to distinguish *Smith v Shell Oil Co.* (85 NY2d 1000), a fair application of plaintiff's rule to that case—where we concluded that a worker injured while changing a lightbulb on an illuminated sign was involved only in routine maintenance and stated no claim under Labor Law § 240 (1)—would result in liability. To remove and replace a burnt-out bulb, strictly speaking, is to change the sign. Similarly,

the minimal cleaning of windows we deemed beyond the reach of the statute in *Brown v Christopher St. Owners Corp.* (87 NY2d 938, *rearg denied* 88 NY2d 875) also might well be an alteration under such a definition. Such routine maintenance and decorative modifications should fall outside the reach of the statute" (*id.* at 465). Similarly, the Court found that the defendants' proposed rule—that a worker could only recover under section 240 (1) when the work was performed as part of a building construction job—was contrary to the Court's precedents permitting recovery for work performed outside of construction sites (*id.* at 464).

Instead, the Court determined "that 'altering' within the meaning of Labor Law § 240 (1) requires making a *significant* physical change to the configuration or composition of the building or structure" (*id.* at 465). Finding "the question is close," the Court concluded that the work performed by the plaintiff resulted in a significant physical change to the configuration or composition of the building; the plaintiff (and his coworker) brought an electrical power supply from one room to another, which required both extending wiring from the room with the existing power source and chiseling a hole through a concrete wall so as to reach the room in which the clock was to be installed (*id.*; *see also Panek v County of Albany*, 99 NY2d 452 [2003] [plaintiff engaged in "alteration" of building; plaintiff, using a mechanical lift, removed two 200-pound air handlers after performing two days of preparatory work, including dismantling of electrical and plumbing components of a cooling system]).

Another important Court of Appeals precedent on the issue of whether a worker was engaged in a protected activity under Labor Law § 240 (1) is *Martinez v City of New York* (93 NY2d 322 [1999]). The plaintiff in *Martinez* was hired as an environmental inspector by a placement agency and assigned to work for a company that was retained by the defendant to perform asbestos inspection services in public schools. The inspection services were to be performed in phase one of a two-phase asbestos abatement project in public schools. Phase one entailed the inspection of school buildings and the identification of asbestos problem areas; phase two entailed the cleaning and removal work. The plaintiff's duties, performed solely during phase one, were to determine whether asbestos samples had been previously taken, check areas marked as containing asbestos and measure areas where asbestos was found. On the day he was injured, the plaintiff was in a building attempting to measure a pipe that ran from a ceiling to the top of a closet.

The pipe was approximately eight or nine feet above the floor and the plaintiff climbed on a desk to reach it. The plaintiff fell from the desk and was injured.

The plaintiff commenced a Labor Law action against several defendants, claiming that he was entitled to recover under section 240 (1). He moved for summary judgment on the issue of liability on that cause of action and some of the defendants crossmoved for summary judgment dismissing it. Supreme Court denied the plaintiff's motion, granted the defendants' cross motion and the Appellate Division affirmed.

The Court of Appeals affirmed, concluding that the plaintiff was not engaged in a protected activity. The Court wrote, in pertinent part, that "plaintiff's work as an environmental inspector during phase one was merely investigatory, and was to terminate prior to the actual commencement of any subsequent asbestos removal work. In fact, none of the activities enumerated in the statute was underway, and any future repair work would not even be conducted by . . . plaintiff's supervisor, but by some other entity" (*id.* at 326). Notably, the Court "reject[ed] the analysis employed [by the courts] below which focused on whether plaintiff's work was an 'integral and necessary part' of a larger project within the purview of section 240 (1) [, because] [s]uch a test improperly enlarges the reach of the statute beyond its clear terms" (*id.*).

The Court of Appeals next addressed the issue of whether a worker was engaged in "altering" a building or structure in *Prats v Port Auth. of N.Y. & N.J.* (100 NY2d 878 [2003]). In *Prats*, the plaintiff was employed by a company that contracted with the defendant to work on air-conditioning systems at the World Trade Center. The contract involved cleaning, repairing and rehabilitating air handling units, and the company "was obligated to ascertain 'the extent of all construction' related to the project" (*id.* at 879-880). Because of the size of some of the air handling units, the company was required to level floors, lay concrete and rebuild walls to replace large air filtering systems. The plaintiff was an assistant mechanic who worked on many facets of the project.

On the day he was injured, the plaintiff and a coworker were assigned to ready air handling units for inspection; part of that task entailed "perform[ing] any work [on the units] that had to be done" (*id.* at 880). This work required wrenches, a welder set and "Craftsman-type" tools (*id.*). A coworker set up a ladder to inspect a piece of machinery that was suspended approximately 20 feet from the floor and used the ladder to climb onto the unit. The coworker then asked the plaintiff to bring

him a wrench and the plaintiff began to climb the ladder with it. As the plaintiff was climbing the ladder, it slid out from under him and he fell to the floor.

The plaintiff commenced an action against the defendant in federal court seeking damages for violations of Labor Law § 240 (1). The District Court granted the defendant's motion for summary judgment dismissing that cause of action and the plaintiff appealed to the Second Circuit, which certified the issue of whether the plaintiff was engaged in an enumerated activity to the Court of Appeals.

The Court of Appeals first determined that the plaintiff was engaged in "altering" the building and was therefore covered under section 240 (1). The Court then distinguished *Martinez*, observing that "the work here did not fall into a separate phase easily distinguishable from other parts of the larger construction project. Plaintiff's inspection was not in anticipation of [his employer]'s work, nor did it take place after the work was done. The inspections were ongoing and contemporaneous with the other work that formed part of a single contract. The employees who conducted inspections also performed other, more labor-intense aspects of the project. Moreover, plaintiff worked for a company that was carrying out a contract requiring construction and alteration—activities covered by section 240 (1). This contrasts with the asbestos inspector in *Martinez*, who did not work for the company that would actually remove the asbestos" (*id.* at 881).

Next, the Court reviewed *Joblon*, noting that

"[t]here, we looked to the 'time of injury' to determine whether plaintiff's work fell within section 240 (1). Defendant would have us read that phrase in an overly literal manner. In our view, however, the words must be applied in context. At one extreme, a construction worker who, between hammer strokes, pauses to see where to hit the next nail is at that moment 'inspecting.' But this is very different from an inspection conducted by someone carrying a clipboard while surveying a possible construction site long before a contractor puts a spade in the ground. Here, [the plaintiff's employer] employed the plaintiff mechanic substantially to perform work that involved alteration of a building, and, under the facts of this case, he enjoyed the protection of section 240 (1) even though he was inspecting, or more precisely, climbing a ladder, at the moment of the accident . . .

"Although at the instant of the injury he was inspecting and putting the finishing touches on what he had altered, he had done heavier alteration work on other days at the same job site

on the same project. He was a member of a team that undertook an enumerated activity under a construction contract, and it is neither pragmatic nor consistent with the spirit of the statute to isolate the moment of injury and ignore the general context of the work. The intent of the statute was to protect workers employed in the enumerated acts, even while performing duties ancillary to those acts" (*id.* at 881-882).

In closing, the Court stated that "the question whether a particular inspection falls within section 240 (1) must be determined on a case-by-case basis, depending on the context of the work. Here, a confluence of factors brings plaintiff's activity within the statute: his position as a mechanic who routinely undertook an enumerated activity, his employment with a company engaged under a contract to carry out an enumerated activity, and his participation in an enumerated activity during the specific project and at the same site where the injury occurred" (*id.* at 883).

Accordingly, under *Prats*, "[w]hether plaintiff was involved in a protected activity under the statute depends on several factors, including whether plaintiff was employed by a company that was carrying out a construction or alteration project, whether plaintiff's work was ongoing and contemporaneous with that work, whether plaintiff was involved in performing alteration or construction work and whether plaintiff's work was part of a separate phase easily distinguishable from the construction and alteration work" (1B NY PJI3d 2:217, at 1165 [2009]).

Here, plaintiff satisfies none of the *Prats* factors. Plaintiff was not employed by a company that was carrying out a construction or alteration project. The company that employed plaintiff was retained solely to apply the protective film to the six windows in the lobbies. To apply the film, the employees of the company cleaned the windows, cut the film to fit the windows, pulled the liner off of the film, wet the back of the film, slid the film into place on the glass and used a squeegee to remove excess water from the film. To perform their task, the employees needed only a ladder or scaffold, a box cutter to cut the film, a spray bottle containing soap and water to clean the windows, and a squeegee. The employees of the company applied the film to the windows in one day, returning for one day approximately one month later to adjust portions of the film to improve the appearance of the film. The work performed by the employees of the company did not change the size or shape of the windows; the employees neither drilled nor cut any holes in the windows; they did not disturb the frames of the windows; and they did

not work on any portion of the building itself. Thus, the company that employed plaintiff did not make a *significant* physical change to the configuration or composition of the building or structure and thus was not carrying out an alteration project (*see Joblon, supra*; *see also Munoz v DJZ Realty, LLC*, 5 NY3d 747 [2005], *revg* 15 AD3d 363 [2005] [applying new advertisement to billboard does not change billboard's structure and is more akin to cosmetic maintenance or decorative modification]).

Moreover, plaintiff's work was not ongoing and contemporaneous with the alteration work that was being performed elsewhere on the job site by companies other than his employer. The work on the project began in the summer of 2003 and was, according to a project manager employed by the construction manager, "winding down" in April 2004 when plaintiff and his coworker reported to the job site to apply the film. As noted above, plaintiff was on the job site only two days, one day to apply the film to the windows and one day to adjust portions of the film on two windows to modify the appearance of the film. Plaintiff therefore failed to satisfy the second *Prats* factor.

The third *Prats* factor is whether the plaintiff was involved in performing alteration or construction work. As discussed above, plaintiff was not. His work involved applying polyester film to six windows and adjusting portions of the film on two windows. That work entailed cleaning the windows, cutting the film to fit the windows, pulling the liner off of the film, wetting the back of the film, sliding the film into place on the glass and using a squeegee to remove excess water from the film. Plaintiff's work required no tools other than a ladder or scaffold, a box cutter to cut the film, a spray bottle containing soap and water to clean the windows, and a squeegee. Plaintiff made no *significant* physical change to the configuration or composition of the building. Rather, his work, both on the first day he was on the job site and the day he returned to it, was akin to cosmetic maintenance or decorative modification (*see Munoz, supra* [applying new advertisement to billboard does not change billboard's structure and is more akin to cosmetic maintenance or decorative modification]; *Czaska v Lenn Lease*, 251 AD2d 965 [1998] [insulating windows by stapling sheets of plastic over them did not "alter" the windows within the meaning of the Labor Law]). Moreover, plaintiff returned to the job site solely to adjust portions of the film on two windows to modify the *appearance* of the film.

Lastly, plaintiff failed to satisfy the fourth *Prats* factor because his work was part of a separate phase of the project that is eas-

ily distinguishable from the alteration work being performed elsewhere on the job site by companies other than his employer. Plaintiff applied the film to the windows in April 2004 when the project was "winding down," and reported to the job site to adjust the film approximately one month later. Plaintiff did not work on any other aspect of the project, and there is no evidence, indeed no suggestion, that other work on the site was contingent upon the completion of plaintiff's work.

The majority concludes that plaintiff was engaged in "altering" the building, and writes that "the site hardening and security project was part of an overall capital improvement that included plaintiff's work as evidenced by the fact that his company, engaged as a subcontractor, was a member of the team involved in the alteration. Accordingly, we reject the dissent's and defendants' attempt to isolate the specific task plaintiff was engaged in at the time of the injury. Defendants' characterization of plaintiff's work as merely cosmetic is dispelled by the unchallenged evidence that bomb blast film changes the property of glass. Accordingly, plaintiff's employer was engaged to carry out a specific part of the alteration. It is also significant that plaintiff was reinstalling the bomb blast film at the behest of an architect, a professional who would generally be a key player in an alteration project." As is evident, the majority does not discuss the *Prats* factors. Indeed, it does not even mention them. Whether the security enhancement project was part of a capital improvement project, whether plaintiff's employer was hired as a subcontractor, and whether an architect requested that plaintiff adjust the film plaintiff previously applied are irrelevant to the determinative question on this appeal—whether plaintiff was engaged in "alteration" of a building or structure under section 240 (1).

The majority tacitly concludes that plaintiff was engaged in "alteration" of a building or structure because the "bomb blast film change[d] the property of glass." The majority errs, however, because the relevant test is whether the worker made "a *significant* physical change to the configuration or composition of the *building or structure*" (*Joblon*, 91 NY2d at 465 [second emphasis added]). Under the majority's approach, the relevant test becomes whether the worker made "a significant physical change to the configuration or composition of *a component of* the building or structure." Moreover, under the majority's approach, as long as the change to the component of the building is significant, it does not matter at all how insignificant the component is to the building or structure. Thus, if the facts otherwise were the same but plaintiff had been called back

to the building to adjust the film on only one small window, the majority's approach requires the conclusion that plaintiff was engaged in an "alteration" within the meaning of the statute. That conclusion is at odds with the concern expressed in *Joblon* that "allowing every change in a structure to qualify as an alteration [would] give[ ] the statute too broad a reach" (*id.* at 464).[1]

At bottom, the majority's conclusion rests on two principles that have been rejected: that plaintiff was engaged in a protected activity because his work was an "integral and necessary part" of a larger project within the purview of section 240 (1) (*Martinez*, 93 NY2d at 326), and that plaintiff was engaged in a protected activity because he was "working on a building" (*Rhodes-Evans v 111 Chelsea LLC*, 44 AD3d 430, 433 [2007]).

Accordingly, I would reverse the order on appeal, deny plaintiff's motion, grant defendants' cross motion and dismiss the Labor Law § 240 (1) cause of action.[2] [*See* 2008 NY Slip Op 33173(U).]

1. The evidence in the record does not in any event establish that the application of the film to the glass changed the "property" of the glass. An employee of the construction manager testified that the film "would change the property of the glass," and plaintiff similarly testified that when the film is applied to the glass "the physical properties of the glass" are changed. Neither of these individuals was qualified to render an expert opinion as to whether the application of the film to glass changes the physical properties of the glass. This is unsurprising because both of these individuals are merely lay, fact witnesses. Plaintiff's window film safety expert did not aver that the application of the film to glass would change the properties of the glass. Instead, he asserted that the application of the film to glass "would alter the behavior of glass after impacted by explosive forces." Additionally, the promotional literature for the film states that the film "adheres to the interior side of the window [and the] polyester material acts like an invisible coat of armor, making the glass significantly stronger." No suggestion is made in the product literature that the application of the film to the glass changes the physical properties of the glass.

2. Because I would dismiss the section 240 (1) claim on the ground that plaintiff was not engaged in a protected activity, I need not decide whether a triable issue of fact exists regarding whether plaintiff was the sole proximate cause of his injuries.