## Davis v Manhattan Chelsea Mkt. LLC

2025 NY Slip Op 32002(U)

June 4, 2025

Supreme Court, New York County

Docket Number: Index No. 150173/2021

Judge: Richard G. Latin

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. RICHARD G. LATIN**                    PART            46M

*Justice*

------------------------------------------------------------------------------X

ALBERT DAVIS,                                          INDEX NO.        150173/2021

                                   Plaintiff,          MOTION DATE      01/31/2025

            - v -                                      MOTION SEQ. NO.     003

MANHATTAN CHELSEA MARKET LLC and BUDDAKAN
NY, L.P.,                                              **DECISION + ORDER ON
                                                        MOTION**
                                   Defendants.

------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 003) 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 101, 104, 105, 106, 107, 108, 109, 110, 111

were read on this motion for                SUMMARY JUDGMENT                .

In this Labor Law action, plaintiff Albert Davis moves, pursuant to CPLR 3212, for partial summary judgment on the issue of liability under Labor Law § 240 (1) as against defendants Manhattan Chelsea Market LLC (Chelsea) and Buddakan NY, L.P. (Buddakan).

## BACKGROUND

This action arises out of an accident that occurred on September 17, 2019 at 75 Ninth Avenue, New York, New York (NY St Cts Elec Filing [NYSCEF] 87, complaint, ¶¶ 35, 36). Plaintiff, a window glazier, alleges that while he was standing on a ladder performing repair and renovation work, the ladder moved and collapsed, causing him to fall to the ground (*id.*). Chelsea admitted that it owned the premises on the date of the accident (NYSCEF Doc No. 88, Chelsea's answer, ¶ 4). Plaintiff alleges that Buddakan leased the premises and operated a restaurant on the premises (NYSCEF Doc No. 87 ¶¶ 24, 25). Buddakan retained plaintiff's employer, nonparty Zecca Mirror Glass & Architectural Metal, Inc. (Zecca), to replace 10 windows at the restaurant (NYSCEF Doc No. 98).

**150173/2021  DAVIS, ALBERT vs. MANHATTAN CHELSEA MARKET LLC ET AL**          **Page 1 of 12**
  **Motion No.  003**

1 of 12

Plaintiff testified at his deposition that he was employed as a window glazier by Zecca in 2019 (NYSCEF Doc No. 94, plaintiff tr at 25, 26). When asked if he received any training at Zecca, plaintiff testified that he "knew the basics of cutting glass and stuff like that, so they just showed [him] how to cut shadows and stuff and measure storefronts and things of that nature" (*id.* at 26). His responsibilities were to "[c]ut glass, polish glass, work the polish machine, take measurements, deliver glass, open and close the shop, inventory, [and] sand blasting" (*id.* at 31). Plaintiff worked with a partner when he was delivering and installing glass (*id.* at 32). Plaintiff testified that his partner, Julio Villanueva, received instructions about where the glass had to be installed and then told plaintiff (*id.* at 33-34).

On the date of the accident, plaintiff and Villanueva met at Zecca's shop, and then loaded supplies and a ladder in a truck (*id.* at 37). Plaintiff obtained an eight-foot A-frame ladder in the shop (*id.* at 38, 41). Plaintiff had never used the ladder before, and did not inspect the ladder (*id.* at 40, 66). There were three or four other ladders of different sizes in the shop (*id.* at 38). When they arrived at the site, Villanueva spoke with someone who opened the door of the restaurant (*id.* at 42). Villanueva then told plaintiff that they had to remove all of the restaurant's windows (*id.* at 43). Plaintiff did not remember how many windows there were, but stated that "there were a lot of windows" (*id.* at 44). The windows were about 12 inches wide and three feet high (*id.*).

Plaintiff further testified that Villanueva told plaintiff that they were going to remove the silicone caulk from the windows with a razor and then were going to remove the old windows (*id.* at 45). Plaintiff was standing inside the restaurant on the ladder, while Villanueva was standing outside the restaurant (*id.*). According to plaintiff, Villanueva grabbed the window pane after the silicone had been removed (*id.* at 46). They had removed four windows before his accident occurred (*id.* at 47). Plaintiff testified that he had to move the ladder for each window (*id.* at 48,

**150173/2021 DAVIS, ALBERT vs. MANHATTAN CHELSEA MARKET LLC ET AL**
**Motion No. 003**

**Page 2 of 12**

2 of 12

[* 2]

52). He had to climb the ladder all way to the top rung to reach the glass (*id.* at 49-50). Plaintiff stated that he made sure that the ladder did not move each time before he ascended the ladder, and that the ground was level where he placed the ladder (*id.* at 51, 53). When plaintiff went to remove the fifth window, plaintiff "climbed all the way to the top" and "had [the] razor in [his] hand" (*id.* at 54). Plaintiff stated that he was removing silicone, and as he was pulling down on the right side of the window, "the ladder started moving, and then it tipped to the right," causing him to fall on his foot (*id.* 54, 67). Plaintiff stated that he did not turn his body to reach the window (*id.* at 61). Plaintiff testified that there were no witnesses to his fall (*id.* at 71). Plaintiff remained on the ground for about 10 minutes (*id.*).

Brandon Wergeles testified that he was Buddakan's general manager (NYSCEF Doc No. 95, Wergeles tr at 24). Buddakan is a one-story restaurant attached to Chelsea Market (*id.* at 25). He did not know whether Google owned the building on the date of the accident (*id.* at 29). Buddakan's facilities manager, Andy Ng, requested that the windows be removed (*id.* at 48). Wergeles approved the window replacement, but did not remember why the windows were going to be removed (*id.* at 50). Zecca was hired to replace 10 or 12 windows on 16th Street (*id.* at 51, 55). Zecca's scope of work was to remove the old windows and install new windows (*id.* at 55). Wergeles did not observe any Zecca workers on ladders on the date of the accident (*id.* at 63). He recalled that Zecca brought a four-foot or six-foot A-frame ladder to the site (*id.* at 63-64). Wergeles remembered that a man had fallen on the date of the accident and that the paramedics were called (*id.* at 64). He did not believe that Buddakan provided any tools or equipment to Zecca's employees (*id.* at 82).

**150173/2021   DAVIS, ALBERT vs. MANHATTAN CHELSEA MARKET LLC ET AL**          **Page 3 of 12**
  **Motion No.  003**

3 of 12

[* 3]

John Burgess testified that he was employed as a Director of Workplace Services for New York City by Google LLC (NYSCEF Doc No. 96, Burgess tr at 12-13). He believed that Chelsea was the owner of the premises (*id.* at 23-24).

Plaintiff commenced this action on January 7, 2021, seeking recovery against Chelsea and Buddakan for violations of Labor Law §§ 200, 240, and 241 (6) and under principles of common-law negligence (NYSCEF Doc No. 87).

## DISCUSSION

It is well established that "[t]he proponent of summary judgment must establish its defense or cause of action sufficiently to warrant a court's directing judgment in its favor as a matter of law" (*Ryan v Trustees of Columbia Univ. in the City of N.Y., Inc.*, 96 AD3d 551, 553 [1st Dept 2012] [internal quotation marks and citation omitted]). "Thus, the movant bears the burden to dispel any question of fact that would preclude summary judgment" (*id.*). "Once this showing has been made, the burden shifts to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution" (*Giuffrida v Citibank Corp.*, 100 NY2d 72, 81 [2003]). "On a motion for summary judgment, facts must be viewed 'in the light most favorable to the non-moving party'" (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012], quoting *Ortiz v Varsity Holdings, LLC*, 18 NY3d 335, 339 [2011]). "[M]ere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" to raise an issue of fact (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

### *Labor Law § 240 (1)*

Plaintiff moves for partial summary judgment under Labor Law § 240 (1), arguing that he performed covered work under the statute. According to plaintiff, his work of removing the old windows and installing new windows constituted alteration work, and cannot be viewed as routine

**150173/2021   DAVIS, ALBERT vs. MANHATTAN CHELSEA MARKET LLC ET AL**          **Page 4 of 12**
  **Motion No.  003**

[* 4]

4 of 12

maintenance. He further contends that defendants violated the statute when the unsecured ladder he was standing on moved and collapsed, causing his injury. Plaintiff also asserts that he cannot be found to be the sole proximate cause of his injuries.

In support of his argument, plaintiff submits an affidavit in which he avers that the ladder was not tied off by ropes or other similar devices (NYSCEF Doc No. 86, plaintiff aff, ¶ 2). No one was holding the ladder (*id.*). Additionally, plaintiff states that the ladder was not "blocked" and there were no devices to support the ladder (*id.*). Plaintiff indicates that no one instructed him to use any devices to support the ladder (*id.*).

In opposition, Buddakan[1] asserts that plaintiff was not engaged in covered work under Labor Law § 240 (1). Buddakan submits that plaintiff was engaged in routine maintenance, as there is no evidence that the windows were being replaced because they had been damaged as a result of an unusual occurrence. Buddakan contends that plaintiff was the sole proximate cause of his accident because he stood on the top rung of the ladder.

For its part, Chelsea argues that there was nothing wrong with the ladder, and that the ladder was adequate to perform plaintiff's work. Like Buddakan, Chelsea maintains that plaintiff was the sole proximate cause of his accident because he stood on the top rung of the ladder. Further, plaintiff has failed to demonstrate that a safety device would have prevented his fall. Chelsea contends that plaintiff's self-serving affidavit must be disregarded, and his credibility must be assessed by a jury.

In reply, plaintiff argues that he was engaged in alteration and not routine maintenance. Plaintiff asserts that there is no evidence that the windows were being replaced as a result of preventative maintenance. He insists that removing windows and installing new windows changed

---

[1] It appears that counsel's affirmation contains a typographical error as to which defendants his firm represents.

**150173/2021   DAVIS, ALBERT vs. MANHATTAN CHELSEA MARKET LLC ET AL**            **Page 5 of 12**
  **Motion No.  003**

5 of 12

the configuration and composition of the building's structure. Plaintiff also argues that defendants failed to show that plaintiff had adequate safety devices available and that he chose not to use them for no good reason. In addition, according to plaintiff, defendants only speculate that he did not need to stand on the top step of the ladder to reach the window.

Labor Law § 240 (1), commonly known as the Scaffold Law, provides as follows:

> "All contractors and owners and their agents, . . . , in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

Labor Law § 240 (1) imposes absolute liability on owners, contractors, and their agents for any breach of the statutory duty which proximately causes an injury (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513 [1991]; *Haimes v New York Tel. Co.*, 46 NY2d 132, 136 [1978]). The duty imposed is "nondelegable and . . . an owner or contractor who breaches that duty may be held liable in damages regardless of whether it has actually exercised supervision or control over the work" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 500 [1993]). The "purpose of the statute is to protect workers by placing ultimate responsibility for safety practices on owners and contractors instead of on workers themselves" (*Panek v County of Albany*, 99 NY2d 452, 457 [2003]).

> "Not every worker who falls at a construction site, . . . , gives rise to the extraordinary protections of Labor Law § 240(1). Rather, liability is contingent upon the existence of a hazard contemplated in section 240 (1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (*Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]).

"[I]n order to recover under section 240 (1), the plaintiff must establish that the statute was violated and that such violation was a proximate cause of his injury" (*Barreto v Metropolitan*

**150173/2021   DAVIS, ALBERT vs. MANHATTAN CHELSEA MARKET LLC ET AL**
  **Motion No.  003**

**Page 6 of 12**

*Transp. Auth.*, 25 NY3d 426, 433 [2015], *rearg denied* 25 NY3d 1211 [2015]). Nevertheless, "where a plaintiff's own actions are the sole proximate cause of the accident, there can be no liability" (*id.* [internal quotation marks and citation omitted]).

As a preliminary matter, Chelsea admitted that it was the owner of the premises on the date of the accident (NYSCEF Doc No. 88, Chelsea's answer, ¶ 4). "Consequently that fact is not in controversy" (*Urraro v Green*, 106 AD2d 567, 568 [2d Dept 1984]). Accordingly, the court holds that Chelsea may be held liable under Labor Law § 240 (1) (*see Sanatass v Consolidated Inv. Co., Inc.*, 10 NY3d 333, 341-342 [2008]).

In addition, plaintiff has demonstrated that Buddakan qualifies as an "owner" within the meaning of the Labor Law. "The term 'owner' within the meaning of article 10 of the Labor Law encompasses a 'person who has an interest in the property and who fulfilled the role of owner by contracting to have work performed for his benefit'" (*Zaher v Shopwell, Inc.*, 18 AD3d 339, 339 [1st Dept 2005], quoting *Copertino v Ward*, 100 AD2d 565, 566 [2d Dept 1984]). Buddakan leased the premises, and subsequently hired Zecca to replace windows (NYSCEF Doc Nos. 97, 98). Thus, Buddakan may also be held liable under section 240 (1).

Labor Law § 240 (1) imposes the duty to protect workers engaged in "the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure." The Court of Appeals has held that "'altering' within the meaning of Labor Law § 240 (1) requires making a *significant* physical change to the configuration or composition of the building or structure" (*Joblon v Solow*, 91 NY2d 457, 465 [1998] [emphasis in original]). Simple, routine activities such as maintenance and decorative modifications are not within the activities protected by Labor Law § 240 (1) (*see Saint v Syracuse Supply Co.*, 25 NY3d 117, 125 [2015]). In determining whether the plaintiff's work constituted "alteration" of a building or structure, courts "must examine the

**150173/2021   DAVIS, ALBERT vs. MANHATTAN CHELSEA MARKET LLC ET AL**     **Page 7 of 12**
  **Motion No.  003**

[* 7]

7 of 12

totality of the work to determine whether it resulted in a significant physical change to the building or structure" (*Maes v 408 W. 39 LLC*, 24 AD3d 298, 300 [1st Dept 2005], *lv denied* 7 NY3d 716 [2006] [internal quotation marks and citation omitted]), and should not "isolate the moment of injury and ignore the general context of the work" (*Prats v Port Auth. of N.Y. & N.J.*, 100 NY2d 878, 882 [2003]). "The intent of the statute was to protect workers employed in the enumerated acts, even while performing duties ancillary to those acts" (*id.*).

Courts have held that applying bomb blast to lobby windows constitutes "altering" within the meaning of section 240 (1) (*see Belding v Verizon N.Y., Inc.*, 65 AD3d 414, 415-416 [1st Dept 2009], *affd* 14 NY3d 751 [2010]). The First Department has also held that boarding up windows to prepare premises for demolition constitutes "altering" (*Santiago v Rusciano & Son, Inc.*, 92 AD3d 585, 585 [1st Dept 2012]). Similarly, a worker's removal of storm windows has been held to be "altering" within the meaning of the statute (*Ferrari v Niasher Realty*, 175 AD2d 591, 592 [4th Dept 1991]). On the other hand, merely installing window shades does not fall within the meaning of "altering" (*Topoli v 77 Bleecker St. Corp.*, 176 AD3d 553, 553 [1st Dept 2019]; *Amendola v Rheedlen 125th St., LLC*, 105 AD3d 426, 427 [1st Dept 2013]).

Construing section 240 (1) liberally to accomplish its purpose of protecting workers (*see Belding*, 65 AD3d at 416), plaintiff has demonstrated that his work of removing old windows and installing new windows constitutes "altering" within the meaning of Labor Law § 240 (1). Indeed, plaintiff's work entailed "making a significant physical change to the configuration or composition of the building" (*Joblon*, 91 NY2d at 465 [emphasis omitted]). Plaintiff testified that he and his partner had to remove silicone off the side of the windows with a razor, had to take out the old windows, and then had to install the new windows (NYSCEF Doc No. 94, plaintiff tr at 44-47; *see also* NYSCEF Doc No. 98). Plaintiff stated that they had to use an eight-foot A-frame ladder in

**150173/2021   DAVIS, ALBERT vs. MANHATTAN CHELSEA MARKET LLC ET AL**          **Page 8 of 12**
**Motion No.  003**

[* 8]

8 of 12

order to remove the windows (NYSCEF Doc No. 94, plaintiff tr at 41, 43, 49, 65). According to plaintiff, it took about 30 minutes to remove each window (*id.* at 65). Plaintiff's task cannot be described as a simple, routine activity or a cosmetic change (*see Saint*, 25 NY3d at 125). Defendants' unsupported assertions that plaintiff's work involved routine maintenance are insufficient to raise an issue of fact.[2]

Labor Law § 240 (1) requires that ladders and other safety devices be "so constructed, placed and operated as to give proper protection" to a worker (Labor Law § 240 [1]; *see also Klein v City of New York*, 89 NY2d 833, 833-834 [1996]). "It is well settled that a statutory violation is established if a scaffold or ladder shifts, slips, or collapses, thereby causing injury to a worker" (*Castillo v TRM Contr. 626, LLC*, 211 AD3d 430, 430-431 [1st Dept 2022], citing *Panek*, 99 NY2d at 458).

Applying these principles, plaintiff has demonstrated a statutory violation, which served as a proximate cause of his injuries. Plaintiff testified that, when he went to remove the fifth window, "the ladder started moving, and then it tipped to the right," causing plaintiff to fall (NYSCEF Doc No. 94, plaintiff tr at 54, 67). No one was holding the ladder (NYSCEF Doc No. 86, plaintiff aff, ¶ 2).[3] This evidence establishes that defendants violated Labor Law § 240 (1) by failing to secure the ladder against movement (*see Rodas-Garcia v NYC United LLC*, 225 AD3d 556, 556 [1st Dept 2024]; *Ping Lin v 100 Wall St. Prop. L.L.C.*, 193 AD3d 650, 651 [1st Dept 2021]; *Montalvo v J.*

---

[2] The court finds *Trotman v Verizon Communications, Inc.* (166 AD3d 707, 708 [2d Dept 2018], *lv denied* 32 NY3d 917 [2018]), *Esposito v New York City Indus. Dev. Agency* (305 AD2d 108, 108 [1st Dept 2003], *affd* 1 NY3d 526 [2003]), and *Soriano v St. Mary's Indian Orthodox Church of Rockland, Inc.* (118 AD3d 524, 525 [1st Dept 2014]), relied upon by Buddakan, to be distinguishable. In *Trotman*, the plaintiff was replacing burnt-out light bulbs (*Trotman*, 166 AD3d at 708). In *Esposito*, the plaintiff was repairing an air conditioning unit that was not functioning properly (*Esposito*, 305 AD2d at 108). Furthermore, in *Soriano*, the plaintiff was replacing broken glass panels in the steeple of a church (*Soriano*, 118 AD3d at 525). Here, the record indicates that Buddakan was renovating the premises and replacing all of the windows (NYSCEF Doc No. 94, plaintiff tr at 43).

[3] Contrary to Chelsea's contention, plaintiff's affidavit does not directly contradict his prior deposition testimony (*cf. Rodriguez v New York City Hous. Auth.*, 304 AD2d 468, 469 [1st Dept 2003]).

**150173/2021   DAVIS, ALBERT vs. MANHATTAN CHELSEA MARKET LLC ET AL**                    **Page 9 of 12**
  **Motion No.  003**

[* 9]

*Petrocelli Constr., Inc.*, 8 AD3d 173, 174-175 [1st Dept 2004]). Plaintiff was not required to demonstrate that the ladder was defective (*see Begnoja v Hudson Riv. Park Trust*, -- AD3d -- , 2025 NY Slip Op 02847, *1 [1st Dept 2025]; *Rodas-Garcia*, 225 AD3d at 556).

Moreover, defendants have failed to raise an issue of fact as to whether plaintiff was the sole proximate cause of his accident.

> "A defendant has no liability under Labor Law § 240(1) when plaintiffs: (1) 'had adequate safety devices available,' (2) 'knew both that' the safety devices 'were available and that [they were] expected to use them,' (3) 'chose for no good reason not to do so,' and (4) would not have been injured had they 'not made that choice'" (*Biaca-Neto v Boston Rd. II Hous. Dev. Fund Corp.*, 34 NY3d 1166, 1167-1168 [2020], quoting *Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 40 [2004]).

As the First Department has noted, "it is 'conceptually impossible' for a plaintiff's negligence to be the sole proximate cause of an accident where, as here, it is shown that a violation of Labor Law § 240 (1) was a concurrent cause of the accident" (*Suazo v 501 Madison-Sutton LLC*, 235 AD3d 513, 513 [1st Dept 2025], quoting *Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 290 [2003]). Given that defendants failed to secure the ladder against movement and tipping, a statutory violation was a cause of the accident. Thus, plaintiff cannot be solely to blame for his accident (*see Velasco v Green-Wood Cemetery*, 8 AD3d 88, 89 [1st Dept 2004] ["Given an unsecured ladder and no other safety devices, plaintiff cannot be held solely to blame for his injuries"]). Defendants only speculate that the ladder was adequate for plaintiff to safely reach the windowpane without standing on the top step of the ladder. In fact, plaintiff testified that he stood on the top step because he "would have to get to a certain spot or a certain level of the ladder to get to the glass" (NYSCEF Doc No. 94, plaintiff tr at 49). Wergeles testified that he did not know the measurements of the windows (NYSCEF Doc No. 95, Wergeles tr at 57). In any event, plaintiff's standing on the top step of the ladder constitutes, at most, comparative

**150173/2021    DAVIS, ALBERT vs. MANHATTAN CHELSEA MARKET LLC ET AL**
**Motion No.  003**

**Page 10 of 12**

10 of 12

[* 10]

negligence, which is not a defense to absolute liability under Labor Law § 240 (1) (*see Saavedra v 89 Park Ave. LLC*, 143 AD3d 615, 615 [1st Dept 2016]). Additionally, defendants have submitted no evidence that adequate ladders or other safety devices were available and that plaintiff unreasonably chose not to use them (*see York v Tappan Zee Constructors, LLC*, 224 AD3d 527, 528 [1st Dept 2024]; *Daly v Metropolitan Transp. Auth.*, 206 AD3d 467, 468 [1st Dept 2022]; *Sacko v New York City Hous. Auth.*, 188 AD3d 546, 547 [1st Dept 2020]). To be sure, plaintiff testified that he did not know the size of the other ladders in the shop, and that Zecca did not have harnesses or other safety equipment for glass installation (NYSCEF Doc No. 94, plaintiff tr at 38, 41).

That plaintiff was the sole witness to the accident does not bar summary judgment under section 240 (1) in his favor. Although plaintiff testified that no one witnessed his fall (NYSCEF Doc No. 94, plaintiff tr at 71), defendants have failed to raise an issue of fact as to whether he fell from an unsecured ladder or as to any material fact (*see Mannino v J.A. Jones Constr. Group, LLC*, 16 AD3d 235, 236 [1st Dept 2005] [unwitnessed fall from ladder did not bar summary judgment where there was no substantiated challenge to the plaintiff's credibility]; *Perrone v Tishman Speyer Props., L.P.*, 13 AD3d 146, 147 [1st Dept 2004] ["The fact that plaintiff may have been the sole witness to his accident does not preclude summary judgment on his behalf"]). "'[N]othing in the record controverts his account of the accident or calls his credibility into question'" (*Pinzon v Royal Charter Props., Inc.*, 211 AD3d 442, 443 [1st Dept 2022], quoting *Rroku v West Rac Contr. Corp.*, 164 AD3d 1176, 1177 [1st Dept 2018]).

Finally, to the extent that Chelsea argues that plaintiff has failed to identify a safety device that could have prevented his fall (*see Guzman-Saquisili v Harlem Urban Dev. Corp.*, 231 AD3d

**150173/2021 DAVIS, ALBERT vs. MANHATTAN CHELSEA MARKET LLC ET AL**
**Motion No. 003**

**Page 11 of 12**

11 of 12

685, 686 [1st Dept 2024], citing *Ortiz v Varsity Holdings, LLC*, 18 NY3d 335, 340 [2011]), he demonstrated that the ladder was inadequate for his work (*see Pinzon*, 211 AD3d at 444).

In sum, plaintiff is entitled to partial summary judgment under Labor Law § 240 (1) as against Chelsea and Buddakan.

## CONCLUSION

Accordingly, it is

**ORDERED** that the motion (sequence number 003) of plaintiff Albert Davis for partial summary judgment on the issue of liability under Labor Law § 240 (1) is granted as against defendants Manhattan Chelsea Market LLC and Buddakan NY, L.P., with the issue of plaintiff's damages to be determined at the trial of this action.

| | | |
|---|---|---|
| **6/4/2025** | | |
| **DATE** | | **RICHARD G. LATIN, J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | | **X** | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | **X** | GRANTED | | DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**150173/2021   DAVIS, ALBERT vs. MANHATTAN CHELSEA MARKET LLC ET AL**                    **Page 12 of 12**
   **Motion No.  003**

12 of 12

[* 12]